Jack GERRITSEN, Plaintiff,

v.

Javier ESCOBAR Y CORDOVA, et al., Defendants.

No. CV85–5020–PAR.

United States District Court, C.D. California.

Sept. 21, 1988.

Jack Gerritsen, Monterey Park, Cal., pro. per.

Robert C. Bonner, U.S. Atty., Stephen Petersen, Asst. U.S. Atty., Los Angeles, Cal., Vincent M. Garvey, Richard C. Stearns, Dept. of Justice, Civ. Div., Washington, D.C., Alberto Szekely, Mexico City, United Mexican States, Eduardo de-Ibarolla, Los Angeles, Cal., for defendant Consulado General de Mexico.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

Plaintiff charges moving defendants Consulate General of the United Mexican States, Javier Escobar Y Cordova, Agustin Garcia Lopez Santaolalla, Enrique Guzman, and Salvador Uribe with engaging in a conspiracy to deprive him of his civil rights, acts of assault with a deadly weapon, battery, false imprisonment, kidnapping, intentional infliction of physical trauma, intentional infliction of emotional trauma, theft, destruction of property, and false arrest. Plaintiff's Preliminary Statement of Pre-Trial Contentions of Fact at 3. The dispute primarily arises out of plaintiff's distribution of leaflets and other activities around the Mexican Consulate in Los Angeles and defendants' efforts to stop these activities. Jurisdiction is alleged pursuant to 28 U.S.C. § 1351 (actions against consuls and vice consuls) and 28 U.S.C. §§ 1330(a), 1602–1611 (Foreign Sovereign Immunities Act).[1] Defendants assert that this court lacks subject matter jurisdiction under either statute and therefore move for summary judgment.

Plaintiff filed his original complaint on July 30, 1985. It contained allegations against the moving defendants and President Miguel de la Madrid Hurtado of the United Mexican States; the alleged jurisdictional basis for the complaint was 28 U.S.C. § 1343. This court found that it lacked personal jurisdiction over President of Mexico and that it lacked subject matter jurisdiction under § 1343, accordingly, President de la Madrid was dismissed with prejudice and plaintiff's complaint was dismissed for lack of subject matter jurisdiction. Order at 11. In *Gerritsen v. Hurtado,* 819 F.2d 1511 (9th Cir.1987) the Ninth Circuit upheld the court's ruling on § 1343, but—believing that plaintiff was denied leave to amend—suggested 28 U.S.C. §§ 1330(a) and 1351 as other possible sources of jurisdiction and remanded the case.

*Facts Not Genuinely Controverted*

1. Plaintiff originally filed his complaint in this action on July 30, 1985.

2. Plaintiff filed his First Amended Complaint on October 16, 1987 and his Second Amended Complaint on December 23, 1987.

3. Plaintiff served the original complaint by having a clerk of this court mail the complaint to the Offices of the President of the United Mexican States. Gerritsen Decl., Exhibit C. This service was received in that office on August 20, 1985. Felix Decl. ¶ 7.

4. Plaintiff served the individual defendants as follows:

a) Javier Escobar—process server personally served him summons and complaint at the Mexican Consulate in San Diego, California, on August 12, 1985. Gerritsen Decl., Exhibit H.

b) Agustin Garcia—process server left summons and complaint with Enrique Silva at the Mexican Consulate in Los Angeles, California, on August 7, 1985. *Id.,* Exhibit I.

c) Enrique Silva—process server personally served him summons and complaint at the Mexican Consulate in Los Angeles, California, on August 5, 1985. *Id.,* Exhibit J.

---

**1.** Plaintiff's complaint contains other claims and bases for jurisdiction. They have either been dismissed or are not applicable to these defendants.

d) Salvador Uribe—process server left summons and complaint with Enrique Silva at the Mexican Consulate in Los Angeles, California, on August 7, 1985. *Id.*, Exhibit K.

5. Relevant allegations in plaintiff's Pre–Trial Memorandum ¶ 2 against defendant Escobar are that:

a) on August 5, 1983 defendant approached plaintiff and told him that "action would be taken against him." Los Angeles police officers thereafter detained plaintiff for forty minutes while the officers spoke with defendant and others. SAC ¶ 31.

b) on September 20, 1983 defendant placed plaintiff under citizen's arrest and restrained plaintiff until the Los Angeles police arrived to take plaintiff into custody. SAC ¶ 36.

c) on March 15, 1984 defendant leased ten thousand square feet of open space around the Consulate. SAC ¶ 48.

d) on July 31, 1984 defendant grabbed plaintiff's shoulder to restrain him from distributing leaflets.

e) on December 2, 1983 defendant requested that Alexander H. Williams III of the Office of the United States Attorney for the Central District of California "take whatever measures were necessary to prevent Mr. Gerritsen from continuing to disturb the peace as well as the impairment of its [the consulate's] dignity." SAC ¶ 41.

6. Relevant allegations in plaintiff's Pre–Trial Memorandum ¶ 3 against defendant Garcia are that:

a) on March 15, 1984 defendant leased ten thousand square feet of open space around the Consulate. SAC ¶ 48.

b) on June 20, 1985 defendant threatened "to take more serious measures against plaintiff." Later on that day an employee of the consulate pointed a gun at plaintiff, who was standing twelve feet away. SAC ¶ 49.

7. Plaintiff makes no relevant allegations against defendant Silva in his Pre–Trial Memorandum. (Plaintiff states in his response to defendants' Interrogatory 13 that defendant Silva on June 28, 1983 "interrogated and intimidated" plaintiff.)

8. Relevant allegations in plaintiff's Pre–Trial Memorandum ¶ 5 against defendant Uribe are that:

a) on June 28, 1983 defendant struck plaintiff with his fists and feet. SAC ¶ 26.

b) on August 5, 1983 defendant pushed plaintiff down a flight of stairs. SAC ¶ 31.

c) on October 6, 1983 defendant punched and pushed plaintiff. SAC ¶ 37.

d) on October 25, 1983 defendant Uribe "attacks plaintiff," breaks his glasses, and tears his shirt. SAC ¶ 39.

e) on June 18, 1984 defendant Uribe pushed and punched plaintiff away from the consulate. SAC ¶ 44.

f) on June 20, 1985 defendant pointed a gun in a threatening manner at plaintiff. SAC ¶ 49.

g) on July 17, 1985 defendant struck plaintiff with a heavy metal cylinder. SAC ¶ 50.

h) on July 19, 1985 defendant struck plaintiff in the face. SAC ¶ 51.

i) on July 25, 1985 defendant struck plaintiff with a heavy metal sign. SAC ¶ 52.

j) on July 26, 1985 defendant struck plaintiff with his left foot. SAC ¶ 53.

k) on December 19, 1985 defendant struck plaintiff with two lengths of chain. SAC ¶ 58.

9. The individual defendants are either consuls or an employee of the consulate.

10. The Mexican government believes that the individual defendants were acting in an official capacity during their encounters with plaintiff. Rivas Decl. ¶ 7.

*Possibly Controverted Facts that are not Material*

1. Whether other employees or agents of the Mexican Consulate committed the acts alleged by plaintiff. Because plaintiff has not properly served the Consulate, these acts cannot give rise to liability.

*Standard*

Fed.R.Civ.P. 56(b) provides that a defending party may move for summary judgment if the pleadings and supporting mate-

rial "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment in favor of the defendant is therefore appropriate if plaintiff fails to: 1) produce evidence to support the existence of all essential elements on which plaintiff bears the burden of proof; and 2) show that all disputes about material facts or necessary inferences from the facts could reasonably be resolved in favor of either party by the trier of fact. *See, California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See generally,* Schwarzer, *Summary Judgment and Case Management,* 56 Antitrust Law Journal 213, 218 ("undisputed evidence submitted by a plaintiff may be insufficient to sustain a verdict which turns on a mixed question of law and fact under the applicable substantive law").

Defendants move for summary judgment on the grounds that 1) plaintiff has not effected proper service against any of the parties; 2) the court lacks subject matter jurisdiction over the individual defendants because they are immune from suit under the applicable provisions of the Vienna Convention on Consular Relations; and 3) the court lacks subject matter jurisdiction over the Consulate under the applicable provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* Finding the arguments that it reaches well taken, the court grants defendants' motions.

*Service of Process*

In its earlier ruling on these defendants' motion to dismiss the court found on the sparse record before it that plaintiff had failed to carry his burden of proving that he properly served any of these defendants. The court granted plaintiff one week to supply documentation that he had effected proper service; plaintiff did so.

Defendants responded with further argument about why even the augmented record did not support a finding of proper service. Defendants brought the instant motion before the court had ruled on this issue. Based on all the papers that the parties have submitted on this issue, the court now finds that plaintiff has failed to serve properly any of the defendants.

1. The Individual Defendants

■ Service on individuals is governed by Fed.R.Civ.P. 4(d), which states in relevant part:

Service shall be made as follows:

(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Although service of the original complaint was personally made on defendants Escobar and Silva, service on the other defendants was not. Leaving a copy of the summons and complaint at a place of business does not satisfy the "abode" method of service under Rule 4. *See, Cohen v. City of Miami,* 54 F.R.D. 274, 278 (S.D.Fla. 1972); *Gipson v. Township of Bass River,* 82 F.R.D. 122, 125 (D.N.J.1979). Neither is there any indication that defendant Silva, who was served on behalf of defendants Garcia and Uribe, was their agent for service of process; this provision is strictly construed. *See, Gipson,* 82 F.R.D. at 125; Wright & Miller, Federal Practice and Procedure: Civil § 1097 (1969).

■ Defendants argue that any service of process made within the Consulate is also void under the Vienna Convention. Article 31 of this treaty states:

Inviolability of Consular Posts:

(1) Consular posts shall enjoy the inviolability which they are granted by this article.

(2) The authorities of the receiving State shall not penetrate the parts of the consular post which are used exclusively for the work of the consular office, except with the consent of the head of the consular office ...

Defendants also note that under the FSIA the service of process on a consulate is not effective against that state. *See, 40 D 6262 Realty Corporation v. United Arab Emirates,* 447 F.Supp. 710 (S.D.N.Y.1978).

This argument is not persuasive. Plaintiff served defendants Escobar and Silva in their individual capacity, not as representatives of the Mexican government. There is no indication that the process server entered the consulate surreptitiously or without the consent of the Consulate. Accordingly, defendants Escobar and Silva were properly served; the claims against defendants Garcia and Uribe are dismissed.

2. The Consulate General

■ Proper service on the consulate is governed by the FSIA. *See, Gray v. The Permanent Mission of the People's Republic of the Congo to the United Nations,* 443 F.Supp. 816, 820 (S.D.N.Y.1978), aff'd, 580 F.2d 1044 (2d Cir.1978). Section 1608(a) of the FSIA governs service on foreign states and provides for four alternative methods:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted. 28 U.S.C. § 1608.

The only possibly effective service on the Consulate was the mailing of the complaint to the Office of the President of Mexico. Even accepting plaintiff's argument that the Office of the Presidency qualifies as the head of the ministry of foreign affairs, this service is defective under § 1608(a)(3) because there is no indication in the record that a notice of suit or translation of the documents was mailed.

■ Plaintiff, however, argues that service on the consulate is governed by § 1608(b). Plaintiff contended in the original action before this court that service on consulates is governed by § 1608(b). This subsection applies to agencies or instrumentalities of foreign governments. The legislative history of the FSIA states:

"As a general matter, entities which meet the definition of an 'agency or instrumentality of a foreign state' could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name." 1976 United States Administrative News & Code at 6614.

The Consulate General is not a "department or ministry which acts and is suable

in its own name" and which has an existence apart from the United Mexican States. Felix Decl. ¶¶ 3, 4. The courts in *40 D 6262 Realty Corporation v. United Arab Emirates Government*, 447 F.Supp. 710, 711 (S.D.N.Y.1978) and *Gray v. Congo*, 443 F.Supp. at 820 applied § 1608(a) to a "diplomatic mission." *See also, Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 398 (E.D.Va.1984); *Marlowe v. Argentine Naval Commission*, 604 F.Supp. 703 (D.D.C.1985).

■ Assuming, however, that § 1608(b) does apply, the only relevant provision would be § 1608(b)(3)(B):

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivering of the summons and complaint, together with a translation of each into the official language of the foreign state—

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served,

. . .

Plaintiff failed to provide all the necessary documents to effect service by this method. Under the FSIA, a defendant must be properly served before this court acquires personal jurisdiction over it. *Velidor v. L/P/G Benghazi*, 653 F.2d 812, 817 (3rd Cir.1981) ("Personal jurisdiction over the sovereign exists when the minimum contacts and requirements set forth in §§ 1605–1608 are satisfied."). The claims against the Consulate General must therefore be dismissed without prejudice for lack of subject matter jurisdiction.

*Consular Immunity*

■ The immunity of Consular officials from suit is governed by the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. 6820, 596 U.N. T.S. 261. Article 43 of the Vienna Convention provides as follows: "Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." 21 U.S.T. at 104. The term "consular func-

tions" is defined in Article 5. It states in clause m that consular functions consist in:

performing any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State. 21 U.S.T. at 85.

Defendants assert that all actions they took against plaintiff were to protect the peace and dignity of the consulate.

In *Gerritsen*, 819 F.2d at 1516–17 the Ninth Circuit stated that many of the allegations in the original complaint described activities that were not covered under the Vienna Convention's immunity provisions. Because the record has been narrowed since the Ninth Circuit decision, the immunity issue must be reexamined in light of the record as it now appears.

Defendants Escobar and Silva state that their actions were taken to maintain the peace and dignity of the consular offices. Protection of consular premises is not explicitly mentioned in the Vienna Convention's list of Consular activities. Nonetheless, consular officials may pursue other functions with immunity if the functions meet the limitations in Article 5(m). Nothing in the record suggests that this function is prohibited by any treaties or that the United States has objected to consular personnel exercising this function. Nor is the court aware of any laws or regulations that prohibit the exercise of this function. In the *Message from the President of the United States Transmitting the Vienna Convention on Consular Relations*, 91st Cong., 1st Sess. 49 (1969) (Exec. E) (report of the U.S. Delegation) the United States delegation interpreted this phrase in Article 5(f) to mean that the function assumed by the consular officials must not "displace" local authorities in the exercise of functions conferred on them by law. Although local law enforcement officers have the duty of protecting property, this duty is traditionally shared with the owners. Accordingly,

protection of consular premises is a legitimate consular function within Article 5(m).

■ The next question is whether the acts allegedly taken against plaintiff by these defendants were within this function. There is little case law or international practice that serves as a guide in developing useful criteria for determining whether a particular act is within the scope of a consular function. However, courts that have dealt with this question have considered: (1) whether there is a logical connection between the act and the purported function; and (2) whether the act is a reasonable means to the fulfillment of the function. Some of the relevant criteria in determining these issues are: (1) the subjective intent of the consular official, based on objective evidence, in performing a particular act, *Boyer and Another v. Aldrete*, 23 I.L.R. 445 (Tribunal Civil de Marseille); *Commonwealth v. Jerez*, 390 Mass. 456, 457 N.E.2d 1105, 1108–09 (1983); (2) whether the act furthered some function of the consulate, *Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018 (9th Cir.1987); (3) whether the act is of a "personal character," *Bigelow v. Princess Zizianoff*, 4 I.L.R. 384 (Tribunal Correctional of the Seine 1928); (4) the seriousness of the act, *Id.;* and (5) the absence or presence of a malicious motive in the performance of a particular act, *Maas v. Seelhiem*, 8 I.L.R. 404 (Manitoba King's Bench 1936).

Thus, in *Joseph v. the Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1020 (9th Cir.1987) the court found that claims for breach of contract, conversion, trespass, and waste brought against a Nigerian Consul by his landlord were not covered by consular immunity because the dispute concerned only the defendant's private residence and was not connected to the defendant's official duties. In contrast, in *Commonwealth v. Jerez, supra,* the defendant allegedly assaulted a police officer (who believed that Jerez had been trespassing) when the defendant was on the way to an official cultural function. The court found that the defendant was immune from suit because he was attempting to carry out a legitimate function at the time of the incident. *See also, Heaney v. Government of Spain*, 445 F.2d 501, 505 (2d Cir.1971) (holding that defendants' contract with plaintiff to support his propaganda activities against the British government furthered official function); *Waltier v. Thomson*, 189 F.Supp. 319, 320–21 (S.D.N.Y. 1960) (false statements made by defendant to induce plaintiff to immigrate held covered by consular immunity).

■ Based on the record that exists against these defendants, their alleged acts were attempts to protect the consulate and thus the defendants were exercising an official function. All of these defendants' alleged acts—"threats," physical encounters, communications with American officials—were in response to plaintiff's leaflets and political speeches. Nothing in the record indicates that defendants acted against plaintiff except when he was in the proximity of the consulate or some official Mexican function. Finally, while not determinative, the Mexican government believes that these defendants were acting in an official capacity. Accordingly, the claims against the remaining two defendants are dismissed.