**In the Matter of the Arbitration Between**

**FINAMAR INVESTORS INC., Petitioner,**

v.

**The REPUBLIC OF TADJIKISTAN, Respondent.**

No. 93 Civ. 8880 (MBM).

United States District Court, S.D. New York.

June 20, 1995.

---

George N. Proios, Skoufalos & Proios, New York City, for petitioner.

George F. Chandler III, Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City, for respondent.

**OPINION AND ORDER**

MUKASEY, District Judge.

Petitioner Finamar Investors Inc. commenced this action under the Federal Arbitration Act, 9 U.S.C. § 4, seeking an order compelling respondent, The Republic of Tadjikistan, to arbitrate a dispute arising out of respondent's alleged rejection of a freight transport agreement. On February 4, 1994,

this court entered an order compelling respondent to arbitrate the dispute with petitioner. Respondent moves to vacate this order pursuant to Fed.R.Civ.P. 60(b), and to dismiss the petition pursuant to Fed.R.Civ.P. 12(b), for lack of jurisdiction and improper service. Because service of process did not conform to the requirements of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a), the court did not have jurisdiction over respondent when the February 4 order was entered, and accordingly, it is vacated. However, respondent's motion to dismiss the petition is denied, as petitioner may attempt to perfect service in accordance with the provisions of the FSIA.

I.

In September 1993, respondent, through its agent U.S. Agri Corporation, chartered a vessel from petitioner to transport soybean meal to St. Petersburg, Russia. (Pet. ¶ 2) After the contract was executed (hereinafter, the "charterparty"), U.S. Agri purportedly informed petitioner that the freight award was made erroneously, and the freight would be reopened for bidding. (Proios Aff. ¶ 3) Respondent contracted with another vessel, and petitioner made several demands to arbitrate the dispute, as provided by an arbitration clause in the charterparty. (Id. at ¶ 5) On December 23, 1993, petitioner filed a Summons and Petition to Compel Arbitration, and a Notice of Petition in this court. (Id. at ¶ 7) Copies of the summons and notice were sent to respondent by registered, first-class mail via U.S. Agri's offices in Washington, D.C. (Id.) U.S. Agri's counsel informed petitioner that it was not authorized to accept service on behalf of Tadjikistan, and cautioned that proper service had to be effectuated in accordance with § 1608(a) of the FSIA, which governs service of process on a foreign state. (Id. Ex. F; Chandler Aff. ¶ 6)

On February 1, 1994, a pre-trial conference was held, attended only by petitioner. An order was issued on February 4 compelling Tadjikistan to arbitrate the dispute with Finamar, and providing for the appointment of a three-member panel of arbitrators. (Proios Aff. Ex. I) Respondent contends the

order should be vacated as void, pursuant to Fed.R.Civ.P. 60(b)(4), because defective service of process deprived the court of jurisdiction at the time the order was issued. Petitioner acknowledged that "attempts were being made" to comply with the FSIA (Proios Aff ¶ 9), but full compliance had not been achieved by February 1994. (Chandler Aff. Ex. F) Indeed, petitioner's endeavors to follow the applicable procedures of the FSIA occurred principally after the court issued its February 4 order.

Section 1608(a)(3) of the FSIA requires petitioner to translate the summons, complaint, and notice of suit into the "official language" of the foreign state, and send the documents by registered mail to the clerk of the court, who in turn, dispatches them to the head of the ministry of foreign affairs of the respondent nation. Petitioner attempted to translate the documents into Tadjik, which it had identified as the official language of Tadjikistan, but could not find a Tadjik translator. (Proios Aff. ¶ 18) Petitioner then contacted the offices of the Honorary Counsel of Tadjikistan in the United Kingdom, and the Tadjik Development Agency in London, and learned that Russian was also an official language of Tadjikistan. (*Id.* at ¶ 19) Accordingly, the pleadings were translated into Russian and delivered to the clerk of this court on February 18, 1994, for transmission to Tadjikistan's Minister of Foreign Affairs. (*Id.* at ¶ 20)

Service was never acknowledged. On March 22, 1994, petitioner attempted to serve respondent through diplomatic channels, as provided by § 1608(a)(4), by sending the pleadings to the U.S. Secretary of State for transmittal to the U.S. Embassy in Dushanbe, Tadjikistan, and ultimately, to Tadjikistan's Ministry of Foreign Affairs. (Proios Aff. ¶¶ 23–24) On April 1, 1994, the U.S. State Department notified petitioner that the documents, translated into Russian, had been received by the embassy for presentation to the Minister of Foreign Affairs in Tadjikistan. (*Id.* at ¶ 25)

Respondent contends that the February 4 order should be vacated because process pursuant to the FSIA had not been served. Prior to February 1994, petitioner served U.S. Agri, which allegedly is not an agent designated to accept process on behalf of Tadjikistan. (Pinniger Aff. ¶ 6) Moreover, the documents were not translated into Tadjik, and the acknowledgement form provided respondent with only 20 days to answer, rather than the 60–day period afforded by § 1608(d) of the FSIA. (Resp't Mem.Supp. at 4) Respondent argues that subsequent attempts to serve process cannot cure the jurisdictional defect that existed at the time the order was issued, and in any event, these efforts were unsuccessful because Tadjik, not Russian, is the only official language of Tadjikistan. (Resp't Reply Mem.Supp at 2, 6; Pinniger Aff. ¶ 2)

II.

Section 1608(a) prescribes a hierarchy of four alternative procedures to use when serving process on a foreign state or political subdivision. The first two procedures provide for service according to either special arrangements between the parties, or international conventions governing service of process. 28 U.S.C. § 1608(a)(1)–(2). If neither private arrangements nor formal conventions exist, service can be made under § 1608(a)(3),

by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned,

or according to § 1608(a)(4), which provides for service,

by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court, to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state

and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted. 28 U.S.C. § 1608(a)(3)–(4). Because there are no special arrangements or international conventions at issue here, service could have been accomplished only through subsection (3) or (4), and petitioner failed to satisfy the requirements of either provision. Specifically, petitioner served process on an improper party, in the incorrect language.

 Before the February 4 order, petitioner served U.S. Agri rather than arranging for service upon Tadjikistan's Ministry of Foreign Affairs, as required by subsections (3) and (4) of § 1608(a). Moreover, petitioner failed to serve the documents in Tadjik. Before the February 4 order, petitioner served only English documents, whereas after the order was issued, petitioner managed to obtain translations and serve process in Russian. Petitioner details the difficulty in ascertaining the official language of a nation recently separated from the former Soviet Union. Such difficulty, however, does not absolve petitioner of its responsibility to follow the requirements of § 1608(a)(3) and (4), which specify that the summons and complaint must be translated into the official language of the foreign state. English language documents obviously do not suffice, and the court is not at liberty to recognize Russian as an official language of Tadjikistan when the U.S. State Department refuses to state a position on the issue. (Pinniger Aff. ¶ 3)

 Petitioner does not claim that it strictly complied with § 1608(a), but rather argues that service was sufficient because respondent received actual notice of the suit. (Pet.Mem.Opp'n at 7) Several courts have upheld service where the serving party "substantially complied" with the requirements of the FSIA if actual notice was received, but these cases involve service on an agency or instrumentality of a foreign state, rather than on the foreign state itself. *Velidor v. L/P/G/Benghazi,* 653 F.2d 812, 821 (3d Cir. 1981), *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982); *Sherer v. Construcciones Aeronauticas, S.A.,* 987 F.2d 1246, 1250 (6th Cir.), *cert. denied,* ── U.S.

──, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993); *Harris Corp. v. National Iranian Radio and Television,* 691 F.2d 1344, 1352 (11th Cir. 1982); *Obenchain Corp. v. Corporation Nacionale de Inversiones,* 656 F.Supp. 435, 437 (W.D.Pa.1987), *aff'd in part, rev'd in part,* 898 F.2d 142 (3d Cir.1990); *Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala,* 616 F.Supp. 301, 304 (S.D.N.Y.1985). In contrast, courts considering defects in service on a foreign state or subdivision typically require strict adherence to the FSIA. *Alberti v. Empresa Nicaraguense De La Carne,* 705 F.2d 250, 253 (7th Cir.1983); *Gerritsen v. Consulado General De Mexico,* 989 F.2d 340, 345 (9th Cir.), *cert. denied,* ── U.S. ──, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Gray v. Permanent Mission of People's Republic of Congo,* 443 F.Supp. 816, 820–21 (S.D.N.Y.), *aff'd,* 580 F.2d 1044 (2d Cir.1978).

The disparate treatment of foreign states and their agencies can be traced to the language of the statute itself. Section 1608(a) governs service of process on a foreign state or instrumentality, while § 1608(b) establishes different procedures for service on foreign agencies or instrumentalities. In § 1608(b), Congress permits service by delivery "if reasonably calculated to give actual notice," thereby relaxing the required procedures in the event actual notice is conveyed. 28 U.S.C. § 1608(b)(3). The analogous provision in § 1608(a) does not refer to actual notice. Moreover, the Committee Report describes the provisions in § 1608(b) simply as "methods under which service shall be made upon an agency or instrumentality of a foreign state," whereas the Report explains that § 1608(a) "sets forth the exclusive procedures for service on a foreign state, or political subdivision thereof." H.R.Rep. No. 94–1487 at 23–24. The absence of a reference to actual notice in § 1608(a), and the Congressional caution that the statute's procedures constitute the exclusive methods of service, mandate strict adherence to its terms, not merely substantial compliance. A stricter standard for service on foreign states is justified because agencies and instrumentalities "often possess a sophisticated knowledge of the United States legal system that other

organs of foreign governments may lack." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C.Cir.1994) (holding strict compliance is required under § 1608(a), but not § 1608(b)), *cert. denied*, —— U.S. ——, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995).

Because petitioner did not comply with § 1608(a) when it served the wrong entity in the wrong language, service of process was defective. Whether or not respondent received actual notice of the suit is irrelevant when strict compliance is required. Even if strict compliance were not required, at least one Court found that failure to serve process in the correct language does not even satisfy the substantial compliance standard. *Straub v. AP Green, Inc.*, 38 F.3d 448, 453 (9th Cir.1994). Defective service deprives this court of jurisdiction over respondent. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Accordingly, the February 4 order compelling arbitration of the underlying dispute must be vacated.

### III.

■ Although defective service requires the court to vacate the earlier order, it does not necessitate dismissing the complaint for insufficiency of process. The defects appear readily curable, and petitioner has already taken substantial steps toward full compliance. Thus, the suit may go forward if petitioner perfects service within a reasonable time, in accordance with § 1608(a). *First City, Texas–Houston, N.A. v. Rafidain Bank*, No. 90 Civ. 7360, 1992 WL 296434, at *2 (S.D.N.Y. Oct. 6, 1992) (plaintiff given reasonable time to cure defective service under FSIA); *Lippus v. Dahlgren Mfg. Co.*, 644 F.Supp. 1473 (E.D.N.Y.1986) (lawsuit preserved by permitting plaintiff 30 days to perfect service under FSIA).

\* \* \*

The order entered on February 4, 1994 is vacated pursuant to Rule 60(b) for want of personal jurisdiction because of petitioner's failure to serve process according to the requirements of the FSIA. For the reasons stated above, respondent's motion to dismiss the complaint is denied, and petitioner may attempt to perfect service pursuant to § 1608(a) of the FSIA by August 30, 1995.

SO ORDERED.