**Daniel BERDAKIN, an individual, Plaintiff,**

v.

**CONSULADO DE LA REPUBLICA DE EL SALVADOR, a government agency; Consul General of El Salvador dba Los Angeles Consulate of El Salvador; and Does 1–20, inclusive, Defendants.**

No. CV 95–6145–SVW(JRx).

United States District Court, C.D. California.

Dec. 15, 1995.

Barry R. Edwards, Spiegelman and Edwards, Los Angeles, CA, for plaintiff.

J. Arnoldo Beltran, Noemi Cruz Yates, Beltran & Leal, Los Angeles, CA, for defendants.

AMENDED ORDER GRANTING IN PART DEFENDANTS' MOTION TO VACATE SUMMONS AND DISMISS COMPLAINT FOR LACK OF JURISDICTION

WILSON, District Judge.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff Daniel Berdakin leased office space at 2412 W. Seventh Street in Los Angeles to defendant Consulado de la Republica de El Salvador ("the Consulate"). He alleges that the Consulate breached the lease, and is suing for damages. The Consulate and defendant Consul General, Gerardo Sol Mixco ("the Consul"), have entered special appearances for the limited purpose of contesting personal and subject matter jurisdiction. Accordingly, defendants have moved to vacate the summons and dismiss the complaint for lack of jurisdiction.

The Consulate contends that it is immune from plaintiff's suit under the Foreign Sovereign Immunities Act, and the Consul argues that he is immune under the Vienna Convention's consular immunity doctrine. After giving careful consideration to the parties' submissions and hearing oral argument on this motion, the Court has concluded that it lacks jurisdiction over the Consul, that it possesses jurisdiction over plaintiff's claim against the Consulate, and that it does not possess jurisdiction over the Consulate because plaintiff has failed to effect proper service upon it. The Court therefore grants the motion with prejudice as to the Consul, and grants the motion as to the Consulate with the qualification that plaintiff may attempt to effect proper service upon the Consulate.

## I. Background

On March 15, 1992, plaintiff Daniel Berdakin entered into a lease with the Consulate for office space at 2412 W. Seventh Street, Los Angeles for a term of 72 months. The Consul executed the lease on behalf of the Consulate. In or about July 1995, defendants vacated the premises and ceased payment of rent. Berdakin filed a complaint for rent and other damages in Los Angeles Superior Court on July 25, 1995, and purported to serve the summons and complaint upon Vice–Consul Victor Ollua at the Consulate's new premises on August 14, 1995. All of the documents which plaintiff purported to serve are in English. Defendants removed the action to this Court on September 14, 1995 under 28 U.S.C. § 1441(b) and (d), as an action against a foreign sovereign state as defined by 28 U.S.C. § 1603. The Consulate and the Consul now move to vacate the summons and dismiss the complaint on the grounds that this Court lacks both personal and subject matter jurisdiction.

## II. Discussion

■ The Court's analysis begins with the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq., which defendants claim bars plaintiff's suit and renders plaintiff's purported service ineffective. "The FSIA is the exclusive source of subject matter jurisdiction over suits involving foreign states or their instrumentalities." *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018, 1021 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988) (*citing De Letelier v. Republic of Chile,* 748 F.2d 790, 793 (2d Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985)). *See also* 28 U.S.C. § 1602. The FSIA also specifies the procedures for service of process upon foreign states and their political subdivisions, agencies, and instrumentalities. 28 U.S.C. § 1608. The Consul's claim of immunity derives from Article 43 of the Vienna Convention, which confers immunity on consular officials in certain circumstances. Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77.

This Court must resolve the following issues: (1) whether the Consulate is immune from suit under the FSIA; (2) whether the Consul is immune from suit under the Vienna Convention; and (3) if either defendant is not immune, whether service was effective.

### A. The Consulate's Immunity under the FSIA

■ It should be noted as a preliminary matter that the FSIA applies only to states and their instrumentalities, and not to the Consul himself, and concomitantly, that the

Vienna Convention's consular immunity doctrine applies only to the Consul himself, and not to the Consulate. *Joseph*, 830 F.2d at 1021. The Consulate "qualifies as a 'foreign state' under the FSIA," rather than merely an agency or instrumentality of a foreign state. *Id.* (*quoting Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1517 (9th Cir. 1987)).

■ Under the FSIA, the Consulate is presumed immune from jurisdiction; it is the burden of the plaintiff to offer evidence that one of the FSIA's exceptions to immunity applies. *Id.; Meadows v. Dominican Republic*, 817 F.2d 517, 522–23 (9th Cir.1987). The FSIA codified the "restrictive theory" of sovereign immunity, under which "immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 487, 103 S.Ct. 1962, 1968, 76 L.Ed.2d 81 (1983); *Meadows*, 817 F.2d at 522. Berdakin claims that this Court has jurisdiction over the Consulate for purposes of this suit pursuant to the FSIA's waiver exception, 28 U.S.C. § 1605(a)(1), and the commercial activity exception, 28 U.S.C. § 1605(a)(2).

1. Waiver of Immunity

The waiver exception provides that a "foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case (1) in which the foreign state has waived its immunity either explicitly or by implication...." 28 U.S.C. § 1605(a)(1). The Ninth Circuit has held that "at the very least it is clear that a sovereign party has waived immunity where a contract *specifically* states that the laws of a jurisdiction within the United States are to govern the transaction." *Joseph*, 830 F.2d at 1022 (emphasis in original) (*citing Marlowe*

*v. Argentine Naval Comm'n*, 604 F.Supp. 703, 708–09 (D.D.C.1985)).

■ In this case, the contract between the parties provides that "This Lease shall be governed by the laws of the state where the Premises are located." Defendants' Exhibit A, at recital 24. Since the subject premises are located at 2412 W. Seventh Street in Los Angeles, California, it follows that the Consulate agreed that the lease would be governed by the laws of California. The Court thus holds that the Consulate implicitly waived its sovereign immunity with respect to suits arising out of the lease. *See Marlowe, supra* (waiver found where contract stated it would be governed by laws of District of Columbia); *Resource Dynamics Int'l., Ltd. v. General People's Committee for Communs. and Maritime Transport in the Socialist People's Libyan Arab Jamahiriya*, 593 F.Supp. 572, 575 (N.D.Ga.1984) (waiver found where contract stated it would be governed by laws of Virginia).[1] It appears undeniable that the instant suit arises out of the lease, so the Court holds that the Consulate is not immune from Berdakin's suit. *Cf. Gates v. Victor Fine Foods*, 54 F.3d 1457, 1465–66 (9th Cir.1995) (no waiver of immunity where defendant had agreed to submit to U.S. jurisdiction in an unrelated transaction).

2. Commercial Activity Exception

Although the Court is confident that the Consulate waived its sovereign immunity by signing the lease, in an abundance of caution the Court will also address the FSIA's commercial activity exception. Section 1605(a)(2) provides in relevant part that a foreign state is not immune from suit where "the action is based upon a commercial activity carried on in the United States by the foreign state." In determining whether this exception applies, courts focus on "the particular conduct giving rise to the claim in question," rather

---

**1.** The Ninth Circuit was "reluctant to rest [its] holding [of no immunity] solely on the waiver exception" in *Joseph* because the lease in that case provided merely that "the prevailing party shall be entitled to recover attorney's fees as fixed by the court." 830 F.2d at 1022 & n. 6. The Court held that the reference to "the court" showed that the parties contemplated that U.S. courts would adjudicate disputes arising out of

the lease, even though the lease did not identify the particular state's law that would apply. *Id.* at 1022–23. Since the lease at issue in the case at bar contains an actual choice of law clause binding the parties to California law, the *Joseph* Court's reluctance to rely solely on the waiver exception counsels no similar hesitation on the part of this Court.

than "the defendant's generally commercial or governmental character." *Joseph*, 830 F.2d at 1023 (*quoting Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1379 (5th Cir.1980)). It is thus irrelevant that the defendant is a consulate rather than a company.

■ Section 1603 defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act," and it mandates that the "commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." A transaction or act is commercial if it is "of the type an individual would customarily carry on for profit," *De Letelier*, 748 F.2d at 797, but although "the presence of a profit motive" may be sufficient to render activity commercial, it is not necessary. *Joseph*, 830 F.2d at 1024.

*Joseph* involved a fact situation remarkably similar to this case. The Nigerian Consulate rented a house to be used by one of its employees, and the landlord sued the Consulate for, *inter alia*, breach of the lease contract. The Ninth Circuit could have been discussing this case when it said: "There is nothing about the lease agreement, or the alleged breach of that agreement, which distinguishes the transaction from an ordinary private commercial transaction, aside from the fact that the Consulate General of Nigeria was the tenant." *Id.* The Court observed that the legislative history of the FSIA strongly supported its conclusion that the activity was commercial. *Id.* Indeed, the House Report cites a lease of property by a foreign government as an example of commercial activity. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 16, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6615.

Similarly, in *Meadows* the Ninth Circuit held that obtaining a loan commitment from a private lender constituted commercial activity even though the proceeds were put to public use. "The term 'commercial activity' applies to an agreement that might be made by a private person, notwithstanding the fact that the goods or services to be procured through the contract are to be used for a public purpose." 817 F.2d at 523 (*citing* H.R.Rep. No. 1487, at 16). An activity is non-commercial, or public, if it "is one which only a sovereign state can perform." 817 F.2d at 523. *Accord Schoenberg v. Exportadora de Sal, S.A., de C.V.*, 930 F.2d 777, 780 (9th Cir.1991). Thus, since only a sovereign state can enter into a contract regulating its exports and imports, its termination of such an agreement is not a commercial act. *MOL, Inc. v. Peoples Republic of Bangladesh*, 736 F.2d 1326, 1329 (9th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).

Obviously, anyone can enter into a contract to lease property, so it would seem that the activity giving rise to this suit is commercial. The Consulate appears to argue, however, that the fact that the lease was for property *to be used as a consulate* compels a different conclusion.[2] It argues that it was forced to terminate the lease because the property was unsuitable for use as a consulate and thus that the acts giving rise to this suit were public rather than commercial. The Court disagrees.

The fact that only a sovereign state can use property for a consulate has no bearing on the question of the consulate's immunity under 1605(a)(2), because that goes to the purpose of the transaction, rather than its nature. In two recent decisions, *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992), and *Saudi Arabia v. Nelson*, 507 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993), the Supreme Court focused on the interpretation of "commercial" activity. Despite "the difficulty of distinguishing 'purpose' (i.e., the *reason* why the foreign state engages in the activity) from 'nature' (i.e., the outward form of the conduct that the foreign state performs or

---

2. It is unclear whether defendants contend only that the Consul is immune under the Vienna Convention because the lease and termination were consular activities or whether they also intend to argue that these facts require the Court to find that the activity at issue was not commercial and thus that the Consulate is immune under the FSIA. The Court will address both arguments.

agrees to perform," *Weltover*, 504 U.S. at 617, 112 S.Ct. at 2167 (emphasis in original), the Court recognized that section 1603(d) "unmistakably commands us to observe that distinction." *Id. See also Nelson*, 507 U.S. at 361, 113 S.Ct. at 1479. Thus, "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *Id., quoting Weltover*, 504 U.S. at 614, 112 S.Ct. at 2166 (citations omitted) (emphasis in original).

■ Here, the particular actions performed by the foreign state consist of entering into a lease and allegedly breaching it by abandoning the premises. Unlike the torture and police abuses at issue in *Nelson*, these are undoubtedly the type of actions by which a private party engages in commerce. The "nature" of the transaction here was a lease of property, and the "purpose"—which the FSIA declares to be irrelevant—was to enable El Salvador to establish a consulate. Since the acts giving rise to this suit involve no "powers peculiar to sovereigns," *Weltover*, 504 U.S. at 614, 112 S.Ct. at 2166, the Court holds that they constitute "commercial activity" under section 1603(d). The Consulate's contentions regarding the public motivations behind the alleged breach may be relevant as defenses to plaintiff's claim of breach, but they lend no support to the Consulate's claim of immunity under the FSIA.

**B. The Consul's Immunity under the Vienna Convention**

The Court will now address the issue of the Consul's immunity under Article 43 of the Vienna Convention. Since the FSIA does not apply to the Consul himself, the Court has jurisdiction over plaintiff's claim against the Consul under 28 U.S.C. § 1351, but the Court cannot possess jurisdiction over the Consul if he is protected by consular immunity. Article 43 provides that the Consul "shall not be amenable to [suit in the United States] in respect of acts performed in the exercise of consular functions." Article 5 lists 12 such functions, and contains a catch-all clause, 5(m), which defines "consular functions" in relevant part as "any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving state or to which no objection is taken by the receiving state." 21 U.S.T. at 85.

The Consul contends that he acted "in the exercise of consular functions" in entering into the lease and in terminating it and thus is immune under Article 5(m). He argues that he acted within the scope of his official duties in signing the lease on behalf of the Consulate, and that he was entrusted with the function of securing office space for the operation of the Consulate.

The Court has been unable to locate much authority construing "consular functions." Nevertheless, several recent cases shed some light on the matter. In *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515–16 (9th Cir.1987) (*Gerritsen I*), the Ninth Circuit held that it was not a consular function to beat and threaten physical violence against a leafletter to prevent him from distributing his wares in front of the consulate. Such conduct constituted interference with the internal affairs of the receiving State in violation of Article 55(1) and of international law, and thus was outside the scope of Article 5(a) because that provision grants immunity only "within the limits permitted by international law." *Id.* at 1516. *See* Article 5(a), 21 U.S.T. at 82. Nor was it immune under the catch-all provision, since the crimes alleged were "prohibited by the laws and regulations of the receiving State." *Id. See* Article 5(m), 21 U.S.T. at 85.

On remand, the District Court held that consular immunity applied to the allegations remaining after the Court of Appeals' decision.[3] After analyzing the cases and international practice, the Court articulated a two-pronged test to determine whether consular

---

3. It is not clear from the opinion exactly what allegations were still at issue on remand, but it appears that they involved a broad spectrum of conduct including " 'threats,' physical encounters, [and] communications with American officials." 721 F.Supp. 253, 259 (C.D.Cal.1988).

immunity applies to conduct alleged to have been "in the exercise of" a consular function. First, the Court should consider "whether there is a logical connection between the act and the purported function," and second, it should decide "whether the act is a reasonable means to the fulfillment of the function." *Gerritsen v. Escobar Y Cordova*, 721 F.Supp. 253, 259 (C.D.Cal.1988) (Rymer, J.). The Court then identified some relevant criteria for these determinations: "(1) the subjective intent of the consular official, based on objective evidence, in performing a particular act; (2) whether the act furthered some function of the consulate; (3) whether the act is of a personal character; (4) the seriousness of the act; and (5) the absence or presence of a malicious motive in the performance of a particular act." *Id.* (citations omitted).

The consular functions alleged to have been furthered were the maintenance of "the peace and dignity of the consular offices" and "the protection of [the] consular premises," *id.* at 258, which the Court held to be legitimate consular functions under Article 5(m)'s catch-all provision. The Court then found that the alleged acts were in fact "attempts to protect the consulate," and thus held that consular immunity applied. *Id.* at 259.

In a related case, the Ninth Circuit held that consular officials were entitled to immunity with respect to verbal threats and warnings made in order to "maintain the peace and dignity" of the consulate and to protect its premises. *Gerritsen v. Consulado General De Mexico*, 989 F.2d 340, 346 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993) (*Gerritsen II*). Unlike the physical violence dealt with in *Gerritsen I*, the conduct in *Gerritsen II* was not "per se illegal in this country" and it was undertaken in furtherance of legitimate consular objectives. *Id.* at 346 & n. 7.

The Ninth Circuit came to a different conclusion in *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018 (9th Cir.1987). In *Joseph*, the consulate leased a house for use as a residence by its employees. Plaintiff sued in tort, alleging that Olalandu, a consular employee who had lived in the house, had left it in a severely damaged condition. The Court stated that "[t]he 'ex-

ercise' of a consular function necessarily implies an attempt by an employee to perform his or her consular duties successfully," and held that "no public interest or function of the Consulate or Nigeria was furthered by the allegedly tortious acts performed by Olalandu." 830 F.2d at 1027. *See also State v. Doering–Sachs*, 652 So.2d 420 (Fla.Ct.App.), *rev. dism'd*, 659 So.2d 1088 (Fla.1995) (no connection between defendant's criminal activity—resisting arrest and threatening with a firearm—and the consular function he was performing).

In *Risk v. Halvorsen*, 936 F.2d 393, 397–98 (9th Cir.1991), *cert. denied*, 502 U.S. 1035, 112 S.Ct. 880, 116 L.Ed.2d 784 (1992), the Ninth Circuit held that issuing passports and helping the sending state's nationals were consular functions under Article 5(d) and (e). This was so even though the conduct at issue (helping plaintiff's ex-wife leave the country with her and plaintiff's children, in violation of a custody decree) might have been criminal under California law, because (d) and (e) do not limit immunity to conduct permitted by international law (unlike (a)) or the receiving state's laws and regulations (unlike (m)).

Like the instant case, *Koeppel & Koeppel v. Federal Republic of Nigeria*, 704 F.Supp. 521 (S.D.N.Y.1989) (Leval, J.), involved a claim of breach of a lease. The Court held that sheltering a Nigerian national overnight in the consulate (in violation of the lease) was a consular function because, unlike the vandalism in *Joseph* or the beatings in *Gerritsen I*, it had "a clear public purpose" and was intended to protect the interests of a national under Article 5(a). *Id.* at 523.

The plaintiff in *Koeppel & Koeppel* contended that defendant could not be immune because its conduct breached the lease and thereby violated the law of the receiving state, but the Court disagreed. "Plaintiff's argument suggests that no immunity should be afforded if the consular official's conduct involves breach of the law. If this were the rule, however, there would be no immunity. Every lawsuit asserted against a consular official accuses him or her of some violation of legal rights. Some unfairness to the wronged party is inherent in the notion of immunity." *Id.* at 523–24. If all illegality

negated immunity, immunity would only offer protection where no protection was needed.

In *Ford v. Clement,* 834 F.Supp. 72 (S.D.N.Y.1993), *aff'd without opinion,* 29 F.3d 621 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 449, 130 L.Ed.2d 359 (1994), a former Vice–Consul claimed consular employees harassed her in order to force her out of her job. The Court held that "the management and supervision of the Vice Consul and other consular staff" were consular functions since "they are fundamental to the efficient execution of all of the other consulate functions enumerated by the Vienna Convention." *Id.* at 75. "Moreover, they are necessarily entrusted to the Consul General and indeed lie at the core of any efforts by the Consul General to perform its designated functions." *Id.* at 75–76.

*Miles Management Corp. v. Republic of South Africa,* 1994 WL 714584 (N.D.Ill.), involved facts very similar to those of the instant case. The consul signed leases on behalf of the consulate for apartments and parking spaces, and the consulate abandoned the premises before the end of the lease. The Court held the Consul immune under section (m). "Entering into a lease was a function entrusted to a consular post by the sending State and this act is in no way prohibited by the laws and regulations of the receiving State." *Id.* at *2. The Court was untroubled by the fact that "breaching the lease agreement is prohibited by law," stating that "what is important here is that in entering into the contract (or lease) consul acted in the exercise of consular functions." *Id.*

The Court has considered these cases and concludes that the Consul is entitled to immunity from this suit. As was true in *Ford* and *Miles Management,* here the suit against the Consul arises out of his performance of a function inherent in his position. The Consul clearly was entrusted with the function of entering into a lease in order to secure office space for the operation of the Consulate; if it were otherwise, the Consul could not carry out any of the functions of his office, since without a lease such as the one entered into by the Consul, there could be no Consulate at all.

The Court therefore concludes that obtaining space in which to operate the Consulate is a legitimate consular function, and that entering into a lease to procure such space is a reasonable means of fulfilling that function. The possibility that the Consul's actions in vacating the premises constitute a breach of the lease does not affect the Court's conclusion that the Consul's acts which plaintiff complains of were performed in the exercise of consular functions.

Some illegal acts, such as beating a protester, cannot be performed in the exercise of consular functions because they are categorically unlawful acts that cannot constitute legitimate consular functions. But other illegal acts may be performed in the exercise of consular functions, because it is not the illegality itself that takes an act outside the ambit of consular functions. Rather, as the term "consular functions" suggests, it is the fact that an act is not a legitimate consular function—whether or not the act is illegal—that renders its performance outside the exercise of consular functions.

█ In this case, the function (obtaining office space for the operation of the Consulate) obviously has been entrusted to the Consul and obviously is not "prohibited by the laws and regulations" of this country. This case thus falls squarely within the language of Article 5(m), and it is irrelevant that the manner in which the Consul performed this function is alleged to have violated the law. Article 5(m) requires that the *function* be legal, but Article 43 does not require that the conduct in the exercise of that function also be legal. If that were the law, consular immunity would only immunize legal conduct, and the doctrine would thus be a nullity. As Judge Leval explained in *Koeppel & Koeppel,* if no illegal act could be performed in the exercise of consular functions, there would be no such thing as consular immunity. If an act were legal, there could be no liability, and if it were illegal, there could be no immunity. *See* 704 F.Supp. at 523–24. *See also Ford,* 834 F.Supp. at 76–77; *U.S. v. Cole,* 717 F.Supp. 309, 323 (E.D.Pa.1989) ("the accepted view is that both civil and criminal acts

may be in furtherance of a legitimate consular function").

The Consul is therefore not "amenable to the jurisdiction" of this Court under Article 43(1).[4] The Court grants defendants' motion to vacate the summons and dismiss the complaint as to the Consul for lack of personal jurisdiction.

### C. Service of Process

In addition to its subject matter jurisdiction/immunity argument under the FSIA, the Consulate also argues that it has not been served properly under the FSIA, and therefore that the Court lacks personal jurisdiction over it. (In light of the Court's holding that the Consul is immune, it is unnecessary to consider his claim that he was not properly served.) The FSIA imposes different requirements for service upon "a foreign state" than upon "an agency or instrumentality of a foreign state." It will be recalled that the Consulate qualifies as a foreign state rather than an agency or instrumentality. *See* 28 U.S.C. § 1603(b). Section 1608(a) sets forth the requirements for service of process upon "a foreign state" such as the Consulate.

### 1. Special Arrangement for Service

The first procedure by which service may be effected is "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state." 28 U.S.C. § 1608(a)(1). Plaintiff argues that a recital in the lease constitutes such a special arrangement. The Court disagrees.

■ Recital 22 provides as follows: "Whenever under this Lease a provision is made for any demand, notice or declaration of any kind, it shall be in writing and served either personally or sent by registered or certified United States mail, postage prepaid, addressed" to tenant at "2412 W. Seventh Street, Second Floor, Los Angeles, CA 90057."[5] By its terms, the recital applies to demands, notices, and declarations provided for by the lease. The lease provides for many such notices, such as the notice under recital 9 from which time the landlord has 30 days to make the requested repair, the written consent required by recital 10 for alterations and additions, the notices provided for by recital 12 for damage to the premises, and others. Since the lease does not mention service of process and contains many much more plausible referents for recital 22's notice provisions, the Court finds that recital 22 does not constitute a special arrangement for service of process.[6]

### 2. Service Under the FSIA Absent a Special Arrangement

The FSIA provides that "if service cannot be made under paragraphs (1) or (2)," plaintiff must serve a foreign state "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3). If

---

**4.** Article 43 provides that no immunity attaches to a consular employee in an action "(a) arising out of a contract concluded by a consular officer or a consular employee in which he did not contract explicitly or impliedly as an agent of the sending State; or (b) by a third party for damage arising from an accident in the receiving State caused by a vehicle, vessel or aircraft." 21 U.S.T. at 104. These exclusions are manifestly inapplicable.

**5.** It should be noted that Berdakin did not serve defendants in accordance, or at least strict accordance, with this purported special arrangement for service. Service was made at 3450 Wilshire Boulevard in Los Angeles rather than 2412 W. Seventh Street, which Recital 22 supposedly fixed as the place for service. The Court under-

stands that plaintiff effected service at that address because it knew the Consulate had relocated there; any attempt to serve the Consulate at the leased premises would have been fruitless. The Court is mindful, though, that the FSIA established a special, stricter regime for service of process in recognition of foreign states' status as independent sovereigns. In light of the Court's holding that Recital 22 does not constitute a special arrangement for service, it is unnecessary to decide whether Berdakin complied with the terms of that Recital. The Court therefore expresses no opinion on the issue.

**6.** The Court acknowledges that its conclusion in this regard conflicts with the opinion of the District Court in *Marlowe v. Argentine Naval Comm'n*, 604 F.Supp. 703, 707–08 (D.D.C.1985).

plaintiff cannot make service within 30 days under subsection (3), the FSIA requires him to serve the foreign state "by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services" for service by the Secretary through diplomatic channels. 28 U.S.C. § 1608(a)(4).[7]

Berdakin argues that his purported service was effective despite his failure to serve a Spanish translation of any of the documents which he purported to serve. It is true that the Ninth Circuit has "formally adopt[ed] a substantial compliance test for the FSIA," *Straub v. A P Green, Inc.*, 38 F.3d 448, 453 (9th Cir.1994), but this does not help plaintiff. In the same paragraph in which it adopted a substantial compliance test, the Court stated that "[f]ailure to deliver a complaint in the correct language is such a fundamental defect that it fails both a 'strict compliance' test and a 'substantial compliance' test." *Id.*

In *Straub*, the Court had to "decide whether Straub's failure to have the complaint dispatched by the clerk of the court renders service ineffective," *id.*, and it held that this defect was not necessarily fatal. This Court acknowledges that, as in *Straub*, Berdakin's failure to follow the specified procedures for dispatch of process by the clerk of the court "did not per se deprive [this] court of jurisdiction." *Id.*

But Berdakin's purported service is also afflicted with several other defects. First, as already noted, Berdakin did not comply with the translation requirements. Second, Berdakin did not effect service by a form of mail requiring a signed receipt. Third, Berdakin did not address the process to the head of El Salvador's foreign affairs ministry or to the Secretary of State. In fact, Berdakin did not comply with a single provision of section 1608. Berdakin's purported service does not

constitute minimal compliance with the mandates of the FSIA, much less "substantial compliance."

In *Gerritsen II*, the Ninth Circuit held that plaintiff's failure to provide Spanish translations of his purported service upon the Mexican consulate rendered service ineffective even though unlike Berdakin, plaintiff did comply with the other requirements of subsection (3). 989 F.2d at 345. *See also Finamar Investors Inc. v. Republic of Tadjikistan*, 889 F.Supp. 114, 117–18 (S.D.N.Y.1995) (service ineffective despite actual notice where documents translated into Russian rather than Tadjik). The decisions of the Ninth Circuit in *Gerritsen II* and *Straub* are binding on this Court, so it is of no importance that plaintiff has pointed to non-controlling authority upholding untranslated service under the FSIA. *See Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993); and cases cited in *Straub*, 38 F.3d at 453.

The Court therefore holds that plaintiff's purported service upon the Consulate was not effective under 28 U.S.C. § 1608(a), and grants defendants' motion to vacate the summons and complaint and dismiss the suit as to the Consulate for lack of personal jurisdiction. It is worth noting, however, that proper service is the only barrier to this Court's jurisdiction over the Consulate, since the Consulate clearly possesses sufficient contacts with the United States for the exercise of jurisdiction over it to comport with the Constitution. *See, e.g., Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1553 (11th Cir.1993) (relevant forum for due process analysis under FSIA is United States, not particular forum state); *Weltover*, 504 U.S. at 620, 112 S.Ct. at 2169.

### III. Conclusion

The Court hereby GRANTS defendants' motion to vacate the summons and dismiss the complaint as to the Consulate for lack of personal jurisdiction, and hereby GRANTS said motion as to the Consul for lack of

---

**7.** In addition, a plaintiff may serve a foreign state "in accordance with an applicable international convention on service of judicial documents."

28 U.S.C. § 1608(a)(2). Berdakin does not contend that service was properly made under this subsection.

**468**

subject matter jurisdiction. In light of the Court's holding that it possesses subject matter jurisdiction under the FSIA over plaintiff's claim against the Consulate, plaintiff may seek to refile his complaint as to the Consulate and serve the Consulate in accordance with the requirements of the FSIA.

IT IS SO ORDERED.