JACOB SUCKNEY *vs.* BERT P. WILLIAMS, INC. & others.[1]

Suffolk. November 7, 1968. — December 10, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Agency*, Scope of authority or employment. *Assault*.

Evidence in an action warranted findings that the defendant, a common
carrier under a contract with a distributing company to deliver beer
to the company's customers "in a diligent and expeditious manner"
and to give "uninterrupted service . . . agreeing to use its best ef-
forts at all times to avoid stoppages or labor difficulties," hired a
truck driver's helper to ensure that beer deliveries got through to the
company's customers despite labor difficulties, that the defendant's
truck driver parked a beer truck near the premises of a company
customer in front of which pickets were walking, and that the helper,
wishing to impress upon them that interference with beer deliveries
would not be tolerated, made an unprovoked assault with an iron
pipe upon the plaintiff, a bystander, as he started to read a leaflet
given him by a picket; and upon such findings a conclusion was
justified that the helper was acting within the scope of his employment
at the time of the assault and committed it for the purpose of accom-
plishing the defendant's work.

[1] John J. Kearns, the assailant, against whom a default judgment was ob-
tained under count 1, and O'Brien Distributing Company, Inc., in whose
favor a verdict was directed without exception under count 2.

TORT. Writ in the Superior Court dated October 21, 1964.

The action was tried before *Goldberg,* J.

*John J. O'Brien* for the defendant Bert P. Williams, Inc.

*Avram G. Hammer* for the plaintiff.

KIRK, J. In this action of tort for assault and battery the judge, subject to exception, denied a motion for a directed verdict for the defendant Bert P. Williams, Inc. (Williams) whose employee, Kearns, on April 15, 1963, at Chelsea, inflicted blows with a pipe on the plaintiff Suckney. We summarize the evidence in light most favorable to the plaintiff to determine whether it was sufficient to support the finding, implicit in the jury's verdict, that Kearns at the time of the assault was acting within the scope of his employment. *Hobart* v. *Cavanaugh,* 353 Mass. 51, 52. Included in the evidence was the report of an auditor who found for the defendant Williams.

Suckney, sixty-one years of age, operated for many years a gas station at the corner of Second and Chestnut streets in Chelsea. His place of business was directly across the street from an establishment called Heller's where there was a bar and luncheonette and where cigars and cigarettes were sold. Suckney went to Heller's often. About 10:30 A.M. on April 15, 1963, he left his station and crossed the street to go to Heller's. To reach the sidewalk he passed between a truck and an automobile parked in front of Heller's. Five or six men in green uniforms were walking around on the sidewalk in front of Heller's. One of the men gave Suckney a leaflet which he started to read. Kearns suddenly appeared, walked over to Suckney and said, "What the hell are you reading?" He then went around to the far side of the truck and returned swinging a long iron pipe. He proceeded to beat Suckney with it. Suckney sought refuge in Heller's. The police were called.

Kearns was in the employ of Williams as a driver's helper to one Malloy, also an employee of Williams. Williams is a common carrier of commodities in Massachusetts. By a contract with O'Brien, dated March 4, 1963, Williams

agreed for a period of two years to deliver beer, ale and wine to O'Brien's customers among whom was Heller's. Under its contract, Williams agreed to furnish "transportation and delivery services in a diligent and expeditious manner" and to give "uninterrupted service excepting only in the case of conditions beyond . . . [its] control . . . agreeing to use its best efforts at all times to avoid stoppages or labor difficulties."

When Suckney crossed the street to go to Heller's he was totally unprepared for what happened. He was then unaware that rivalry existed between labor unions, particularly with reference to the delivery of alcoholic beverages. While he was being beaten by Kearns, Malloy, the driver of the truck to which Kearns was assigned, was in Heller's to make delivery of five cases of beer from O'Brien. Heller refused to accept delivery of the beer when the regular drivers who had been outside Heller's told him that they were on strike and that the others were "scabs."

The judge instructed the jury in part that if they found that the assault on Suckney by Kearns was within the scope of Kearns' employment and was committed for the purpose of accomplishing the work of Williams, Suckney was entitled to their verdict.

We think that the jury could find that Williams' undertaking with O'Brien was to make sure that the deliveries of beer got through to the customers despite labor difficulties. They could find that the accomplishment of this purpose not uncommonly contemplates a demonstration of force or threats of force or actual use of force. They could find that Kearns, as driver's helper, was hired to provide that element of service under the contract. They could find that the men outside Heller's were pickets and that Kearns wanted to impress upon them that interference with the delivery of beer would not be tolerated. These permissible findings bring the case within the rule stated in Restatement: Agency, § 245, pp. 547–548, which we cited and applied in *Cowan* v. *Eastern Racing Assn. Inc.* 330 Mass. 135, 145. "A master who authorizes a servant to perform acts

which involve the use of force against persons or things, or which are of such a nature that they are not uncommonly accompanied by the use of force, is subject to liability for a trespass to such persons or things caused by the servant's unprivileged use of force exerted for the purpose of accomplishing a result within the scope of employment." The rule is not inapplicable because the means used may be other than that intended by the contract of employment. *Fanciullo* v. *B. G. & S. Theatre Corp.* 297 Mass. 44, 46–47.

We are unable to accept Williams' contention that it should be exculpated because the assault by Kearns was unprovoked, was unexplained by Suckney who was virtually an innocent bystander, and that the assault therefore must be considered an act of personal ill will by Kearns unrelated to his employment by Williams and beyond the scope of his employment. This contention ignores another reasonable view of the evidence which the jury could adopt and which would support a conclusion in favor of Suckney. *Murphy* v. *Bay State Wine & Spirit Co.* 212 Mass. 285, 286–287. *Howes* v. *Kelman*, 326 Mass. 696, 697. The jury could conclude that Kearns regarded Suckney as a likely victim for an intimidating demonstration, in the presence of the pickets, of the degree of force he was prepared to use in order to insure "expeditious delivery" of beer by Williams and "to avoid stoppages or labor difficulties." Thus explained, Kearns' "unprivileged use of force [was] exerted for the purpose of accomplishing a result within the scope of employment." Restatement 2d: Agency, § 245.

There was no error in denying Williams' motion for a directed verdict.

This opinion is the opinion of a majority of the court.

*Exceptions overruled.*