Argued January 16, affirmed March 19, 1979

# STATE OF OREGON, *Respondent,*
## *v.*
# JAY JOSEPH KILLEEN, *Appellant.*
## (No. F 97195, CA 12010)
592 P2d 268

[369]

William Dickas, Portland, argued the cause and filed the brief for appellant.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Lee and Gillette, Judges.

GILLETTE, J.

**GILLETTE, J.**

Defendant appeals his conviction of a traffic infraction.[1] He advances two arguments: first, that because of his status as honorary consul for the nation of Malaysia, the state courts have no jurisdiction over him and, second, that the infraction was committed in the course of his consular duties and that he is consequently immune from prosecution under the terms of the treaty governing consular relationships between the United States and Malaysia.

Defendant's contention that the state court lacked jurisdiction is predicated on 28 USC § 1351, which provides:

> "The [United States] district courts shall have original jurisdiction, exclusive of the courts of the States, of all actions and proceedings against consuls or vice consuls of foreign states."

Section 1351 and its predecessors have been construed as precluding state court jurisdiction only in those instances where the federal courts have jurisdiction over the subject matter of the proceeding. Thus, in *Ohio ex rel Popovici v. Agler*, 280 US 379, 50 S Ct 154, 74 L Ed 489 (1930), the United States Supreme Court held that the courts of Ohio had jurisdiction over a divorce proceeding involving a Romanian vice consul. The court reasoned that the United States courts have no jurisdiction over divorce cases, that "the whole subject of the domestic relations of husband and wife * * * belongs to the laws of the states" (280 US at 383), and that it was not the intent of Congress to deny American citizens—whether the consular officials themselves or their spouses—access to *any* court with the power to grant a divorce.

The reasoning of *Popovici* was applied by the California District Court of Appeal in *Silva v. Superior*

---

[1] Defendant was found guilty of disobeying a traffic control device. He drove in the high occupancy vehicle lane of the Banfield Freeway at a restricted time without the requisite minimum of three persons in his car. He was ordered to pay a $10 fine.

[371]

Court, 52 Cal App 3rd 269, 125 Cal Rptr 78 (2nd Dist. 1975), in which the court held that the California state courts had jurisidiction to try a Mexican consul for a state offense. After an extensive analysis of the legislative history of Section 1351 and of prior judicial interpretations, the court stated:

> "As the federal court has no jurisdiction to try consuls for violation of state criminal statutes, jurisdiction over this type of action—like the divorce proceedings in *Popovici*—rests rests exclusively in the state court * * *. [I]t is reasonable *not* to construe section 1351 as divesting state courts of jurisdiction over actions against consuls arising under local criminal statutes for acts outside the scope of consular duties." 269 Cal App 3rd at 280. (Emphasis in original.)

■ We conclude that Section 1351 does not divest the courts of Oregon of jurisdiction over consular officials charged with violations of state law—at least when the violations are not committed in the performance of official consular duties.

■ The defendant further argues, however, that the infraction of which he was convicted *was* committed in connection with his consular duties, in that the infraction occurred while he was driving to the Portland airport for the purpose of delivering documents to a Malaysian national. The scope of the official duties of Malaysian consuls is defined by the Consular Convention between the United States and the United Kingdom, 3 UST 3434.[2] Defendant relies on two provisions of that treaty, the first of which provides:

> "A consular officer or employee shall not be liable, in proceedings in the courts of the receiving state, in respect of acts performed in his official capacity,

---

[2] The treaty between the United States and the United Kingdom applies because Malaysia was a colony of the latter at the time the treaty was consummated. The parties rely on the cited treaty, and neither the record nor our research discloses any subsequent treaty between the United States and the now independent nation of Malaysia. The record is also barren of any suggestion as to what role, if any, this defendant played in helping Malaysia obtain its independence.

falling within the functions of a consular officer under this Convention, unless the sending state requests or assents to the proceedings through its diplomatic representative."

The second relevant provision states:

"A consular officer shall be entitled within his district to (a) interview, communicate with and advise any national of the sending state * * *"

In construing the privileges and immunities of consuls under treaties such as the one we consider here, certain basic propositions must be borne in mind. Absent an express treaty provision to the contrary, consuls do not enjoy the plenary insulation from the judicial procedures of the receiving state (i.e., country) which ambassadors or ministers enjoy; they are subject to the jurisdiction of the receiving state except "in respect of acts performed in the exercise of consular functions." 1963 Vienna Convention, 21 UST 103, Articles 41, 43. *See, generally, Carrera v. Carrera, 174 F2d 496 (DC Cir 1949); Arcaya v. Paez,* 145 Supp 464 (SDNY, 1956), *aff'd* 244 F2d 958; and 4 AMJur2d 98-99, Sections 15 and 16 (1962. Moreover, the privileges and immunities of honorary consuls, who, unlike career consuls, are generally citizens of the United States and are designated by the sending state for the conduct of commercial or other limited functions,[3] have been frequently held to be even more circumscribed than the immunities of career consuls. *See, e.g., Illinois Commerce Commission v. Salamie,* 54 Ill App 3rd 465, 369 NE2d 235 (1977). In summary, whatever the outer limits of the immunity of consuls from prosecution may be, the weight of authority is that that immunity does not extend to acts which are not performed in the exercise of official consular duties, as defined in applicable treaties and by reference to general law regarding consular functions and privileges.

---

[3] *See* Graham Greene, *The Honorary Consul* (Simon and Schuster, 1973).

[373]

The state argues in this case that, although the defendant's meeting with a Malaysian national at Portland International Airport was an exercise of his consular duties, the act of driving to the airport was not a consular activity.

It is unnecessary, however, for us to decide in this case whether getting to and from the place where the actual consular business is conducted is a consular function. The United States Department of State has concluded that traffic offenses, even if committed by persons of ambassadorial rank in the exercise of their offical duties, are not beyond the purview of the state courts. In 1965, Assistant Secretary of State Douglas MacArthur II, in responding to a question from Senator Case of New Jersey, wrote:

"* * * the Departmemt of State has concluded that a traffic ticket or summons does not constitute legal process within the meaning of Sections 252 and 253 of Title 22 in the United States Code [relating to the immunity of ambassadors and ministers]. Thus, the issuance of such tickets or summonses would not violate the immunity provision set forth in those two statutory sections. We would, therefore, take the view that authorities in all jurisdictions in the United States would be free to issue regular traffic tickets or summonses to any driver with diplomatic or consular status who fails to observe traffic laws and regulations* * * ." 1965 Comm. on Diplomatic and Consular Law of ABA Section of International and Comparative Law Ann. Rep.

The Department of State's interpretations of the existence and scope of diplomatic privileges and immunities are to be accorded great weight by the courts. *Cf. Arcaya v. Paez, supra.* Although the State Department's letter from which we have quoted purported to construe two sections of the United States Code rather than the specific consular treaty upon which defendant relies, those statutory provisions confer absolute immunity upon ambassadors and ministers, while the treaty provisions accord a much more limited scope of immunity to this defendant. In light of the State

[374]

Department's interpretation, we conclude that, even if the act of driving to the airport were a consular function, the defendant would not be relieved of responsibility for the traffic infraction he committed while performing that function.

Affirmed.