COMMONWEALTH vs. RAFAEL JEREZ.

Suffolk.  September 13, 1983. — November 17, 1983.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Consular Immunity.  Practice, Criminal,* Consular immunity.  *Agency,*
Scope of authority or employment.

A consular representative of a foreign government who allegedly engaged
in an altercation with a police officer while proceeding to a public
cultural function to which he had been invited in his official capacity
was deemed to be exercising his consular functions at the time of the
incident and therefore, by reason of the Vienna Convention on Con-
sular Relations, to which the United States is a party, was immune
from prosecution on a resulting charge of assault and battery.
[459-463]

COMPLAINT received and sworn to in the Boston Munici-
pal Court Department on April 20, 1982.

A motion to dismiss was heard by *Grabau,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Margaret Steen Melville,* Assistant District Attorney, for
the Commonwealth.

*Brian W. LeClair* for the defendant.

HENNESSEY, C.J.  A judge in the Municipal Court of the
City of Boston allowed the motion of the defendant, Rafael
Jerez, to dismiss the complaint against him charging assault
and battery upon a police officer.  G. L. c. 265, § 13D. The
judge ruled that Jerez was immune from prosecution under
art. 43 of the Vienna Convention on Consular Relations and
Optional Protocol on Disputes, April 24, 1963, 21 U.S.T.
77, T.I.A.S. No. 6820 (Vienna Convention),[1] as he was con-

_____

[1] Article 43 of the Vienna Convention provides:  "*Immunity from juris-
diction*  1. Consular officers and consular employees shall not be amen-

sul of the Dominican Republic exercising his consular func-
tions at the time of the alleged assault and battery. The
Commonwealth appealed to the Appeals Court pursuant to
Mass. R. Crim. P. 15 (a) (i), 378 Mass. 882 (1979). We trans-
ferred the case to this court on our own motion. We affirm
the judge's allowance of the motion to dismiss.

The judge made the following findings of fact. On April
18, 1982, Jerez, in his official capacity as consul of the
Dominican Republic, was invited to a cultural function to
be held in the Brighton section of Boston at 8:30 P.M. Jerez
had agreed to attend this event and said he would bring the
flag of his country and literature on the Dominican Repub-
lic. Jerez was to occupy a table which was set aside for him
to display the literature.

Around 8 P.M. on April 18, 1982, Jerez went to the consu-
late offices located in the Statler Office Building at 20 Provi-
dence Street in Boston. At that time he failed to comply
with the request to sign in made by the security guard on
duty. Jerez proceeded to the floor where his office was
located, intending to pick up the flag and literature, and
left the building shortly thereafter. The security guard
feared that Jerez was a trespasser and alerted a police officer
who was across the street from the building. The officer
approached Jerez while he was speaking to one Roberto
Noguera, an official of the Colombian consulate, who was
seated in an automobile. An altercation then began in
which the officer struck Jerez and Jerez began to struggle
with the officer. Jerez was placed under arrest for assault
and battery on a police officer.

Based on these findings of fact the judge found that Jerez
was engaged in his official capacity as consul of the Domini-

able to the jurisdiction of the judicial or administrative authorities of the
receiving State in respect of acts performed in the exercise of consular
functions. 2. The provisions of paragraph 1 of this Article shall not,
however, apply in respect of a civil action either: (*a*) arising out of a con-
tract concluded by a consular officer or a consular employee in which he
did not contract expressly or impliedly as an agent of the sending State; or
(*b*) by a third party for damage arising from an accident in the receiving
State caused by a vehicle, vessel or aircraft." 21 U.S.T. 105.

can Republic, intending to participate in a cultural affair, at the time of the alleged assault and battery. Accordingly, the judge ruled that Jerez was immune from prosecution under arts. 5, 29, and 43 of the Vienna Convention. The sole issue[2] now before this court is whether at the time of the alleged assault and battery Jerez was acting in his official capacity as consul of the Dominican Republic for the purposes of immunity from prosecution under art. 43 of the Vienna Convention. We proceed to examine whether the judge's ultimate finding that Jerez was engaged in his official capacity as consul of the Dominican Republic at the time of the altercation was correct, and whether the judge's ruling that Jerez was immune from prosecution was correct.

The Vienna Convention entered into force with respect to the United States on December 24, 1969. Article 43 provides that "[c]onsular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of *acts performed in the exercise of consular functions*" (emphasis added). See note 1, *supra*. The Commonwealth asserts that Jerez is not immune from prosecution under art. 43 because the alleged assault and battery is too far removed from Jerez's function as consul.

Article 5 of the Vienna Convention defines activities considered "[c]onsular functions." It states in part that "[c]onsular functions consist in: . . . (*b*) furthering the development of commercial, economic, cultural and scientific relations between the sending State and the receiving State and otherwise promoting friendly relations between them in accordance with the provisions of the present Convention . . . ." 21 U.S.T. 82-83. In applying this provision to the facts before us, "[t]he clear import of treaty language controls unless 'application of the words of the treaty according to

---

[2] The Commonwealth in its brief also argues that Jerez is not entitled to diplomatic immunity. Jerez does not contest this assertion. We do not express any views on this subject as we conclude that Jerez was immune from prosecution on the ground of consular immunity under art. 5 of the Vienna Convention.

their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.'" *Sumitomo Shoji America, Inc.* v. *Avagliano,* 457 U.S. 176, 180 (1982), quoting *Maximov* v. *United States,* 373 U.S. 49, 54 (1963). The language of art. 5(*b*) defines "[c]onsular functions" in general terms inviting flexible construction. The clear import of such language as "furthering the development of . . . cultural . . . relations" is that it not be construed restrictively. "[A] narrow reading of the treaty would be inconsistent with its apparent purpose to eliminate the last vestiges of the notion that a consul was simply a 'commercial representative.'" *Heaney* v. *Government of Spain,* 445 F.2d 501, 505 (2d Cir. 1971). Applying art. 5(*b*) in a manner consistent with this clear import is appropriate, since doing so will foster the underlying purposes of the Vienna Convention to promote harmonious international relations.[3]

The judge was warranted in concluding that Jerez was seeking to further cultural relations between the Dominican Republic and the United States, and engaged in his consular capacity, at the time of the alleged assault and battery. The judge found that Jerez planned to attend a cultural gather-

---

[3] The Vienna Convention's preamble provides in part:  "*The States Parties to the present Convention,*

"*Recalling* that consular relations have been established between peoples since ancient times,

"*Having* in mind the Purposes and Principles of the Charter of the United Nations concerning the sovereign equality of States, the maintenance of international peace and security, and the promotion of friendly relations among nations,

". . . .

"*Believing* that an international convention on consular relations, privileges and immunities would also contribute to the development of friendly relations among nations, irrespective of their differing constitutional and social systems,

"*Realizing* that the purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States,

"*Affirming* that the rules of customary international law continue to govern matters not expressly regulated by the provisions of the present Convention,

"*Have agreed* as follows: . . ." (emphasis in original).  21 U.S.T. 77, 79.

ing that night at 8:30 P.M., where he would display his national flag and distribute informational literature, that pursuant to this end, Jerez went to his office building at approximately 8 P.M. to pick up his national flag and literature, and that the alleged assault and battery occurred immediately after he left the building which houses his office and while he was talking with a Colombian diplomat. Jerez, therefore, according to the judge, was proceeding to the cultural gathering, after making a stop necessary to fulfil his consular function when the conflict ensued. The judge's findings support his conclusion that Jerez was in the exercise of his consular function.

Other courts interpreting the Vienna Convention have reached similar results. The Court of Appeals for the Second Circuit in *Heaney v. Government of Spain,* 445 F.2d 501, 504-505 (2d Cir. 1971), interpreted arts. 5 and 43 of the Vienna Convention. The plaintiff in *Heaney* brought an action against the government of Spain and one of its consular representatives for breach of contract and tortious inducement to enter a contract which the defendants did not intend to perform. *Id.* at 502. The plaintiff had entered into an agreement with the defendants pursuant to which he would conduct anti-British propaganda in consideration of a sum of money. The defendants sought dismissal of the complaint based on Spain's sovereign immunity and its consul's consular immunity. The motion was allowed and the ruling was upheld by the Court of Appeals. The plaintiff challenged the consular immunity defense alleging that anti-British activities conducted in the United States fall outside normal consular duties. Taking a broad view of consular duties under art. 5, the court rejected this assertion, and concluded that the consular representative's alleged conduct was not actionable.

The scope of a consul's functions and consular immunity also was discussed in *Waltier v. Thomson,* 189 F. Supp. 319, 320-321 (S.D.N.Y. 1960). *Waltier* was decided before adoption of the Vienna Convention. Nevertheless, the case provides guidance concerning the scope of consular immu-

nity. The plaintiff in *Waltier* alleged that a Canadian consular official "made false statements which induced plaintiff to immigrate to Edmonton, Alberta, Canada." *Id.* at 319. The court stated: "A consular official is immune from suit when the acts complained of were performed in the course of his official duties." *Id.* at 320. The court then found the consular official's job was to encourage immigration to Canada, and ruled that the consul "was acting in the course of his official duties," *id.* at 321, in making the statements. Dismissing the complaint, the court found allegedly tortious conduct not actionable because of consular immunity. *Id.* at 320-321.

Finally, an Illinois appellate court in *Illinois Commerce Comm'n* v. *Salamie*, 54 Ill. App. 3d 465, 474 (1977), has discussed the scope of consular immunity. Focusing on art. 55(1) of the Vienna Convention,[4] which requires consuls to respect laws of the receiving State, the court stated, "[Article 55 (1)] cannot be construed to mean that the doing of a single illegal act takes the activity outside the scope of the consular functions except where specifically so provided in article 5." *Id.* But see *State* v. *Killeen*, 39 Or. App. 369, 374-375 (1979) (followed State Department's position in finding that traffic violation is not within scope of consular immunity). We find no specific provision of art. 5 or other authority which takes Jerez's alleged assault and battery outside the scope of his consular functions.

Although we reach our conclusion in this case under the Vienna Convention, common law agency principles are instructive in analyzing whether Jerez was acting within the scope of his consular function at the time of the alleged assault and battery. We long have recognized that acts not strictly necessary for fulfilment of an agent's duties nonethe-

---

[4] Article 55(1) of the Vienna Convention provides: "*Respect for the laws and regulations of the receiving State* 1. Without prejudice to their privileges and immunities, it is the duty of all persons enjoying such privileges and immunities to respect the laws and regulations of the receiving State. They also have a duty not to interfere in the internal affairs of that State."

less may fall within the agent's scope of employment. See *Pigeon's Case,* 216 Mass. 51, 54 (1913); *Hayes* v. *Wilkins,* 194 Mass. 223, 226-227 (1907). The scope of an agent's authority is not construed restrictively in this Commonwealth, see *Pridgen* v. *Boston Hous. Auth.,* 364 Mass. 696, 714 & n.10 (1974), and on several occasions we have considered whether an intentional tort committed by an agent was performed within the scope of his employment. *Miller* v. *Federated Dep't Stores, Inc.,* 364 Mass. 340, 345-350 (1973). *Orasz* v. *Colonial Tavern, Inc.,* 362 Mass. 881 (1972). *Hobart* v. *Cavanaugh,* 353 Mass. 51, 52-53 (1967). *Thompson* v. *Beliauskas,* 341 Mass. 95, 98 (1960). Cf. *Davis* v. *DelRosso,* 371 Mass. 768, 772 (1977). We have found such intentional torts within the scope of employment in a variety of situations. *Orasz* v. *Colonial Tavern, Inc., supra* (bartender's battery of patron). *Suckney* v. *Bert P. Williams, Inc.,* 355 Mass. 62, 63-65 (1968) (truckdriver's helper's battery of bystander). *Hobart* v. *Cavanaugh, supra* (truckdriver's battery of service station attendant). *Rego* v. *Thomas Bros.,* 340 Mass. 334, 335 (1960) (public highway construction superintendent's battery of bystander). *Thompson* v. *Beliauskas, supra* (use of force by bartender against patron). See *Dwyer* v. *Hearst Corp.,* 3 Mass. App. Ct. 76, 79 (1975) (truck driver's battery of person blocking passage).

To determine whether the intentional tort of an employee occurred within the scope of his employment "[w]hat must be shown is that the employee's assault was in response to the plaintiff's conduct which was presently interfering with the employee's ability to perform his duties successfully." *Miller* v. *Federated Dep't Stores, Inc., supra* at 350. While *Miller* addressed employers' liability for acts by employees, we think that the standard set forth there applies in the context of the present case as well. Jerez was planning to attend a cultural gathering at 8:30 P.M. on April 18, 1982. He went to his office around 8 P.M. intending to get his national flag and some literature concerning the Dominican Republic. The alleged assault and battery occurred immediately

after Jerez had left the building and while he was speaking to an official of the Colombian consulate. The police officer's actions interfered with Jerez's unimpeded ability to attend the scheduled cultural gathering. Accordingly, Jerez's alleged wrongful conduct occurred in response to conduct which was presently interfering with his ability to exercise his consular functions successfully. Under the agency principle established in *Miller*, therefore, Jerez was acting within the scope of his authority when the altercation occurred. See *Dwyer* v. *Hearst Corp., supra*; *Manning* v. *Grimsley*, 643 F.2d 20, 25 (1st Cir. 1981).

The Commonwealth also refers us to doctrines of official immunity developed in connection with actions by public officials. We express no opinion on these doctrines as we resolve this case under the language of the Vienna Convention and well-settled principles of agency law.[5]

There was no error in the judge's finding that, at the time of the alleged altercation, Jerez was engaged in the exercise of his consular function as consul of the Dominican Republic, and there was no error in the judge's ruling that Jerez, therefore, is immune from prosecution. The motion to dismiss was properly allowed.

*So ordered.*

---

[5] In his brief, the defendant asserts the Commonwealth "has used this prosecution defensively in an effort to shield the City of Boston and the officer from anticipated civil liability." The Commonwealth denies this allegation. Aside from the truth or propriety of this assertion, the defendant would be well-advised to note that our decision here is based solely on the principle of consular immunity. We in no way imply approval of Jerez's conduct or censure of actions taken by the Boston police officer, because those issues were not reached by the trial judge or by this court, nor do we intend any implications related to civil liability.