## Commonwealth *vs.* Amaury Gautreaux.

Essex. November 4, 2010. - January 20, 2011.

Present: Marshall, C.J., Spina, Cowin, Cordy, Botsford, & Gants, JJ.[1]

*Vienna Convention. Alien. Practice, Criminal,* New trial, Assistance of counsel, Interpreter. *Constitutional Law,* Assistance of counsel.

This court concluded that the notifications required by art. 36 of the Vienna Convention on Consular Relations must be provided to foreign nationals on their arrest, including the requirement that authorities of the detaining State notify the foreign national's consulate of his or her detention [745-746]; further, this court concluded that, if the notifications are not provided, a challenge to the soundness of any conviction resulting therefrom may be made in a motion for a new trial, in which it is incumbent on the foreign national to demonstrate that the failure to comply with art. 36 gave rise to a substantial risk of a miscarriage of justice, i.e., the foreign national must establish, at a minimum, that the consulate would have assisted in a way that likely would have favorably affected the outcome of the case [747-752].

A trial court judge did not err in denying a motion to vacate a guilty plea or for a new trial, in which the defendant, a foreign national, claimed that he was never notified of his right to have his consulate informed of his arrest in violation of art. 36 of the Vienna Convention on Consular Relations, where the defendant, who produced no evidence of the practices and protocols of the consulate, or of the advice and assistance it would have provided on notification of the detention of one of its citizens, failed to demonstrate that the outcome of his case (i.e., pleading guilty to a significantly reduced set of charges with no sentence of incarceration) likely would have been different had he been so notified. [752-753]

A trial court judge did not err in denying a motion to vacate a guilty plea or for a new trial, in which the defendant, a foreign national, claimed that no interpreter had been provided at his plea hearing, where the defendant failed to meet his burden of demonstrating that an interpreter was not made available to him at the plea hearing. [753-755]

Complaints received and sworn to in the Lawrence Division of the District Court Department on January 29, June 2, and July 23, 2003.

A motion to vacate a guilty plea and for a new trial was heard by *Thomas M. Brennan,* J.

[1]Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Sarah G. J. Clymer* for the defendant.

*Tara L. Blackman*, Assistant District Attorney, for the Commonwealth.

CORDY, J. The defendant, Amaury Gautreaux, was born in the Dominican Republic in 1980 and moved to the United States when he was fourteen years of age. His primary language is Spanish and he has never become fluent in English. He is not a United States citizen. On August 27, 2003, he pleaded guilty in the Lawrence District Court to criminal charges arising out of three arrests.[2] Pursuant to a plea bargain struck with the Commonwealth, the defendant received an eleven-month sentence to a house of correction suspended for eighteen months, during which period he was placed on probation.[3] Approximately five years later, on May 26, 2008, the defendant was once again arrested,[4] and on July 8, 2008, he received an order of deportation from the United States Department of Homeland Security.[5] In February, 2009, he moved pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), to vacate his guilty plea and for a new trial.

In his motion, the defendant claimed that he was never notified of his right as a foreign national to have his consulate informed of his arrests in violation of art. 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820 (art. 36 or Vienna Convention). The defend-

---

[2]On January 29, 2003, the defendant was charged with possession of a class A substance with intent to distribute, G. L. c. 94C, § 32, and possession of a class A substance with intent to distribute in a school zone, G. L. c. 94C, § 32J. On June 2, 2003, the defendant was charged with assault and battery. G. L. c. 265, § 13A. On July 23, 2003, the defendant was charged with violation of a protective order, G. L. c. 209A, § 7; assault and battery, G. L. c. 265, § 13A; and threatening to commit a crime, G. L. c. 275, § 2.

[3]Under the terms of the plea agreement, the charge of possession of a class A substance with intent to distribute was reduced to simple possession of a class A substance, and the charge of possession of a class A substance with intent to distribute in a school zone, a charge carrying a mandatory minimum sentence, was dismissed.

[4]The charges arising from this arrest were dismissed.

[5]The Commonwealth represents, and the defendant does not appear to dispute, that the order of deportation was based on one of the defendant's convictions in this case.

ant also claimed that although he was in need of an interpreter, none was provided at his plea hearing where the judge informed him of the possible immigration consequences of a guilty plea as required by G. L. c. 278, § 29D.[6] Consequently, he contends that he was not properly made aware of the possibility that he might be deported as a result of his guilty pleas.

The motion was denied by the same judge who accepted the defendant's guilty pleas. In denying the motion, the judge first concluded that, with respect to the Vienna Convention, there was no relevant case law in Massachusetts regarding its enforceability or remedies for its violation. Next, with respect to the claimed lack of an interpreter, the judge found that in the absence of a tape recording of the proceeding (which had been destroyed in the ordinary course), and in the face of his practice of having an interpreter present if the defendant needed one, the defendant had not met his burden of demonstrating that an interpreter was not made available to him at the plea hearing.

The defendant appealed, and we transferred the case to this court on our own motion to determine (1) whether art. 36 creates individually enforceable rights, and, if so, what remedy is appropriate for a violation of those rights; and (2) whether the

---

[6]In relevant part, G. L. c. 278, § 29D, provides:

"The court shall not accept a plea of guilty, a plea of nolo contendere, or an admission to sufficient facts from any defendant in any criminal proceeding unless the court advises such defendant of the following: 'If you are not a citizen of the United States, you are hereby advised that the acceptance by this court of your plea of guilty, plea of nolo contendere, or admission to sufficient facts may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.' . . .

"If the court fails so to advise the defendant, and he later at any time shows that his plea and conviction may have or has had one of the enumerated consequences, even if the defendant has already been deported from the United States, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty, plea of nolo contendere, or admission of sufficient facts, and enter a plea of not guilty. Absent an official record or a contemporaneously written record kept in the court file that the court provided the advisement as prescribed in this section, including but not limited to a docket sheet that accurately reflects that the warning was given as required by this section, the defendant shall be presumed not to have received advisement."

judge acted properly when he rejected the defendant's claim that he needed, but was not provided with, an interpreter. We conclude that the notifications required by art. 36 must be provided to foreign nationals on their arrest; and, if not provided, a challenge to the soundness of any conviction resulting therefrom may be made in a motion for a new trial. The standard to be applied in such circumstances is the substantial risk of a miscarriage of justice standard, one that the defendant has not met in this case. We also affirm the judge's ruling that the defendant has failed to establish that there was no interpreter at the plea hearing.

1. *Background.* The following additional facts derive from the limited record in this case, which consists of the criminal docket sheets; the transcript of the hearing on the defendant's motion for a new trial; and affidavits from the defendant, the counsel who represented him in the District Court, and his appellate counsel.[7]

After coming to the United States, the defendant attended grades eight through eleven at bilingual schools in the Lawrence public school system. He took and passed ES1, an English language class, but dropped out of high school in the eleventh grade. He was married in 2001, has three children, and maintained a Spanish-speaking household. He was arrested on three occasions in 2003: January 29, June 2, and July 23. The criminal docket sheet from the January 29 arrest indicates the need for a Spanish interpreter. On the criminal docket sheet for both the June 2 and July 23 arrests, the box indicating the need for an interpreter is left blank. The defendant asserts, and the Commonwealth does not dispute, that at no time following his three arrests in 2003 was he notified of his right to have the consulate of the Dominican Republic apprised of his arrest.

The defendant was appointed the same attorney to represent him at each of his three arraignments. During the course of his representation, counsel encouraged the defendant to plead guilty in order to receive a favorable sentence. The defendant avers that he explained to his counsel that he was present in the United States on a "green card" and conveyed to counsel his understanding that he could be deported if he received a sentence

---

[7]The tape recording of the defendant's plea hearing was destroyed after two and one-half years, pursuant to Rule 211 (A) (4) of the Special Rules of the District Courts (LexisNexis 2010-2011).

of more than one year.[8] He also avers that his counsel represented that he would "get [him] less than one year to avoid any immigration consequences."[9]

At the defendant's plea hearing on August 27, 2003, the defendant was read and signed three "Tender of Plea or Admission Waiver of Rights" forms. As noted, the defendant claims that there was no interpreter present at the hearing. He further claims that although he did not understand what the judge was saying or what the forms said, he "answered yes" to the judge's questions on the advice of his counsel.[10] The defendant now maintains that he agreed to plead guilty because he understood that his pleas would not subject him to deportation; he asserts that he would have gone to trial if he had known that deportation was a possible consequence of his convictions.

2. *Article 36 of the Vienna Convention on Consular Relations.* The Vienna Convention, negotiated in 1963, governs the establishment of consular relations between nation States (States) and defines the functions of a consulate. See generally *Commonwealth v. Jerez,* 390 Mass. 456, 456, 458 (1983). The Vienna Convention was ratified by the United States in 1969.[11] *Id.* at 458. Once ratified, the Vienna Convention became the "supreme Law of the Land" and binding on the States of the United States. U.S. Const. art. VI, cl. 2. The United States also signed the Optional Protocol to the Vienna Convention Concerning the Compulsory Settlement of Disputes, April 24, 1963, 21 U.S.T. 325, 596 U.N.T.S. 487 (Optional Protocol), which established that the International Court

[8]The defendant states in his affidavit that he received this information regarding the deportation consequences of a one-year sentence from fellow inmates when he was held in lieu of bail.

[9]This information also comes from the defendant's affidavit. The affidavit from the attorney who represented him on these cases in the Lawrence District Court is silent with respect to any discussion he might have had with the defendant about the potential immigration consequences of pleading guilty to or being sentenced on the charges in this case.

[10]The "Tender of Plea or Admission Waiver of Rights" form includes a specific acknowledgment that, among other things, the defendant understood that if he was "not a citizen of the United States, conviction of [the] offense may have the consequences of deportation." The form was signed not only by the defendant but also by his counsel and the judge taking the pleas.

[11]The Dominican Republic ratified the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820 (Vienna Convention) in 1964. The Vienna Convention has been ratified by 173 nations.

of Justice (ICJ) would have jurisdiction over disputes regarding compliance by the signatory States with the provisions of the Vienna Convention, and made its decisions binding on the parties before it.[12]

Article 36 sets out the procedure to be followed when a foreign national is arrested or detained. It provides in pertinent part that a foreign national shall be notified "without delay" of "his rights," including his right to have authorities of the detaining State notify his consulate of his detention.[13] Art. 36(1)(b). Once requested to do so, such authorities shall inform the detainee's consulate of his detention "without delay." *Id.* Thereafter, consular officers shall be free to communicate with and have access to the detainee and to arrange for his legal representation. Art. 36(1)(c). The Vienna Convention further provides that the rights and obligations it contains "shall be exercised in conformity with the laws and regulations of the receiving State," and that these laws and regulations must "enable full effect" to be given to the intended purposes of art. 36. Art. 36(2). In order to enable the full effect to be given to art. 36, we conclude that the notifications it requires must be incorporated into the protocols of the State and local law enforcement agencies of Massachusetts.[14]

[12]In a 2005 letter from the United States Secretary of State to the Secretary-General of the United Nations, the United States gave notice of its withdrawal from the Optional Protocol in which it agreed to be bound by the decisions of the International Court of Justice (ICJ). Optional Protocol to the Vienna Convention Concerning the Compulsory Settlement of Disputes, April 24, 1963, 21 U.S.T. 325, 596 U.N.T.S. 487 (Optional Protocol).

[13]The foreign national also has the right to have any communication addressed to the consulate forwarded to the consulate by the detaining authorities without delay. Art. 36(1)(b).

[14]Uniform procedures were established for officials of the United States Department of Justice to follow when a foreign national is arrested or detained. Title 28 C.F.R. § 50.5(a) (2010) provides, in relevant part:

"This statement is designed to establish a uniform procedure for consular notification where nationals of foreign countries are arrested by officers of this Department on charges of criminal violations. It conforms to practice under international law and in particular implements obligations undertaken by the United States pursuant to treaties with respect to the arrest and detention of foreign nationals."

The procedures are:

"(1) In every case in which a foreign national is arrested the arresting

The Vienna Convention is silent as to remedy for the failure in individual cases to adhere to the provisions of art. 36, where the detainee is subsequently convicted of a crime. See *Sanchez-Llamas* v. *Oregon*, 548 U.S. 331, 343 (2006) ("The Convention

officer shall inform the foreign national that his consul will be advised of his arrest unless he does not wish such notification to be given. If the foreign national does not wish to have his consul notified, the arresting officer shall also inform him that in the event there is a treaty in force between the United States and his country which requires such notification, his consul must be notified regardless of his wishes and, if such is the case, he will be advised of such notification by the U.S. Attorney.

"(2) In all cases (including those where the foreign national has stated that he does not wish his consul to be notified) the local office of the Federal Bureau of Investigation or the local Marshal's office, as the case may be, shall inform the nearest U.S. Attorney of the arrest and of the arrested person's wishes regarding consular notification.

"(3) The U.S. Attorney shall then notify the appropriate consul except where he has been informed that the foreign national does not desire such notification to be made. However, if there is a treaty provision in effect which requires notification of consul, without reference to a demand or request of the arrested national, the consul shall be notified even if the arrested person has asked that he not be notified. In such case, the U.S. Attorney shall advise the foreign national that his consul has been notified and inform him that notification was necessary because of the treaty obligation."

28 C.F.R. § 50.5(a)(1)-(3).

In *Commonwealth* v. *Diemer*, 57 Mass. App. Ct. 677, 687 n.13 (2003), cert. denied, 540 U.S. 1150 (2004), the Appeals Court noted that although Massachusetts had not acted in conformity with art. 36 in that case, the Massachusetts Attorney General had filed an amicus brief stating that steps were being taken to address the issue in the future. The Attorney General has not filed an amicus brief in this case. At oral argument, the Commonwealth was unaware whether such steps had been taken. However, in a postargument letter, the Commonwealth alerted us that after the *Diemer* case, the Attorney General published a special issue of Criminal Justice News in November, 2003, to address the obligations of law enforcement under the Vienna Convention. The issue was purportedly sent to every police department and to every State and local public agency in the Commonwealth. Additionally, the Commonwealth provided the court with a procedural directive issued by the Department of State Police, issued on April 23, 2009, which outlines the process to be followed by the State police when a foreign national is taken into custody. The Commonwealth also informed the court that consular notification training is provided to both State and municipal police officers. The sufficiency of these efforts to satisfy the requirements of art. 36 is not before us in this case.

does not prescribe specific remedies for violations of Article 36"). We have never determined whether the consular notification requirement of the Vienna Convention confers individual rights[15] on foreign nationals that are judicially enforceable. The only Massachusetts case to address in any significant manner the consequences of a violation of art. 36 is *Commonwealth* v. *Diemer*, 57 Mass. App. Ct. 677 (2003), cert. denied, 540 U.S. 1150 (2004) (*Diemer*). In *Diemer*, a German national sought to suppress statements he made on grounds of a violation of art. 36. The Appeals Court provided a thorough review of the existing split among jurisdictions on the question whether art. 36 creates individual rights that can be enforced by persons (rather than only by signatory States) but found it unnecessary to decide the question because it concluded (as other courts had) that even if art. 36 created individual rights, the suppression of evidence would not be an available remedy. *Diemer, supra* at 685 ("no express language in the treaty contemplates suppression," and such drastic remedy is not imposed by any other signatory to Vienna Convention). This view was subsequently affirmed by the United States Supreme Court in *Sanchez-Llamas* v. *Oregon, supra* at 350 (even if art. 36 conferred individual right to consular notification, application of exclusionary rule would not be available remedy). The Appeals Court further concluded that in any event, the defendant had not demonstrated that he was prejudiced by a violation of the treaty. *Diemer, supra*

---

[15]The question whether a treaty provision creates individual rights is distinct from the question whether a provision of the treaty is self-executing. See Restatement (Third) of Foreign Relations Law of the United States § 111 comment h (1987). A self-executing treaty provision is one that is to have immediate effect on the United States; a nonself-executing treaty provision is one that requires implementing legislation by Congress to be binding on the United States. *Id.* Whether a treaty provision is self-executing is wholly a question of the makers' intent, and a treaty's text is the controlling source of authority concerning their intent absent subsequent relevant legislation. See *id.* at § 111(3), (4). In *Medellin* v. *Texas*, 552 U.S. 491, 506 n.4 (2008), the Supreme Court stated that it was "unnecessary to resolve whether the Vienna Convention is itself 'self-executing.' " But see *Sanchez-Llamas* v. *Oregon*, 548 U.S. 331, 372 (2006) (Breyer, J., dissenting) ("it is common ground that the [Vienna] Convention is 'self-executi[ng]' "); S. Exec. Rep. 9, Appendix at 5, 91st Cong., 1st Sess. (1969) (statement of J. Edward Lyerly, deputy legal advisor for administration) ("The [Vienna] Convention is considered entirely self-executi[ng] and does not require any implementing or complementing legislation").

at 686-687 (defendant was intelligent, literate, spoke English fluently, and was read Miranda rights on three occasions. No showing that art. 36 rights notification would have made difference).

In *Breard* v. *Greene,* 523 U.S. 371, 376 (1998), the United States Supreme Court stated that the Vienna Convention "arguably confers on an individual the right to consular assistance following arrest," but has since avoided the question.[16] Circuit Courts of the United States Appeals that have decided the question have answered inconsistently.[17] Other Federal District and State courts have weighed in, also with varied results.[18]

Consequently, while it remains far from clear whether art. 36 confers rights on individuals judicially enforceable by them under American law, it is unquestioned that an enforceable right exists for signatory States. The International Court of Justice (ICJ) has heard three cases where signatory States have challenged the application (or lack of application) by the United States of art. 36. See *Case Concerning Avena & Other Mexican Nationals* (Mex. v. U.S.), 2004 I.C.J. 12 (Mar. 31, 2004) (*Avena*);

---

[16]See *Medellin* v. *Texas, supra* at 506 n.4 (assuming, without deciding, that art. 36 creates judicially enforceable individual rights); *Sanchez-Llamas* v. *Oregon, supra* at 343 (same). But see *id.* at 371-378 (Breyer, J., dissenting, with whom Stevens, Souter, & Ginsburg, JJ., joined) (four Justices expressed view that art. 36 affirmatively creates judicially enforceable individual rights).

[17]Compare *Mora* v. *New York,* 524 F.3d 183, 188 (2d Cir. 2009) (concluding art. 36 does not confer individual rights that can be vindicated in private action for damages); *Gandara* v. *Bennett,* 528 F.3d 823, 827-828 (11th Cir. 2008) (same); *Cornejo* v. *County of San Diego,* 504 F.3d 853, 859-864 (9th Cir. 2007) (holding art. 36 does not create judicially enforceable individual rights); *United States* v. *Emuegbunam,* 268 F.3d 377, 391-394 (6th Cir. 2001), cert. denied, 535 U.S. 977 (2002) (same), and *United States* v. *Jimenez-Nava,* 243 F.3d 192, 196-198 (5th Cir.), cert. denied, 533 U.S. 962 (2001) (same), with *Jogi* v. *Voges,* 480 F.3d 822, 834-835 (7th Cir. 2007) (holding art. 36 creates judicially enforceable individual rights); *Osagiede* v. *United States,* 543 F.3d 399, 409-411 (7th Cir. 2008) (reiterating that there is an individual right and concluding that it can be raised in criminal proceedings).

[18]Compare *Standt* v. *City of N.Y.,* 153 F. Supp. 2d 417 (S.D.N.Y. 2001) (finding art. 36 provides private right of action enforceable by individuals); *United States* v. *Torres-Del Muro,* 58 F. Supp. 2d 931 (C.D. Ill. 1999) (finding art. 36 confers individual right to consular notification); *United States* v. *Hongla-Yamche,* 55 F. Supp. 2d 74 (D. Mass. 1999) (same); with *Diaz* v. *Van Norman,* 351 F. Supp. 2d 679 (E.D. Mich. 2005) (art. 36 does not create individual right to consular notification); *Lugo* v. *State,* 2 So. 3d 1 (Fla. 2008), cert. denied, 130 S. Ct. 182 (2009) (same); *Gomez* v. *Commonwealth,* 152 S.W.3d 238 (Ky. Ct. App. 2004) (same).

*LaGrand Case* (F.R.G. v. U.S.), 2001 I.C.J. 466 (June 27, 2001) (*LaGrand*); *Case Concerning the Vienna Convention on Consular Relations* (Para. v. U.S.), 1998 I.C.J. 248 (April 9, 1998). The ICJ issued decisions in both *LaGrand* and *Avena*, binding on the United States.[19]

In *LaGrand*, the ICJ concluded that art. 36 of the Vienna Convention not only confers rights on signatory States, but also grants "individual rights" to the States' nationals that "may be invoked in this Court by the national State of the detained person." *LaGrand*, *supra* at 494. More specifically, it ruled:

> "[I]f the United States . . . should fail in its obligation of consular notification to the detriment of [foreign] nationals, . . . it would be incumbent upon the United States to allow the review and reconsideration of the conviction and sentence by taking account of the violation of the rights set forth in the [Vienna] Convention. This obligation can be carried out in various ways. The choice of means must be left to the United States."

*Id.* at 513-514.

Subsequently, in the *Avena* case, the ICJ found that the United States had violated its obligations under art. 36 with regard to a large number of Mexican nationals arrested and subsequently convicted of crimes in Texas. As reparation, the United States was required to provide, "by means of its own choosing, review and reconsideration of the convictions and sentences of the [foreign] nationals" that takes into account the violation of rights set forth in art. 36. *Avena*, *supra* at 72. The ICJ did not limit its holding to the case at hand; indeed, it took care to "re-emphasize a point of importance" that "the fact that in this case the Court's ruling has concerned only Mexican nationals cannot be taken to imply that the conclusions reached by it in the

---

[19]In *Case Concerning the Vienna Convention on Consular Relations* (Para. v. U.S.), 1998 I.C.J. 248 (Apr. 9, 1998), the International Court of Justice (ICJ) instructed the United States to halt execution of Paraguayan national Angel Francisco Breard pending its final ruling, but Breard was executed soon after the United States Supreme Court denied his petitions in *Breard* v. *Greene*, 523 U.S. 371 (1998). Paraguay then discontinued its case with prejudice before the ICJ could issue a decision. *Case Concerning Vienna Convention on Consular Relations* (Para. v. U.S.), 1998 I.C.J. 426 (order of Nov. 10, 1998).

present Judgment do not apply to other foreign nationals finding themselves in similar situations in the United States." *Id.* at 69, 70.

Although a decision of the ICJ is not binding on this court, it is entitled to respectful consideration. *Breard* v. *Greene, supra* at 375. The ICJ is the judicial organ designated to resolve disputes regarding implementation of the Vienna Convention, and as signatory to the Optional Protocol, the United States agreed to be bound by its decisions.[20] We acknowledge and accept the conclusion of the ICJ regarding the obligation that art. 36 creates when clear violations of its notice protocols have been established, that is, to provide some process by which the soundness of a subsequent conviction can be reviewed in light of the violation.

Under our procedural rules, a postconviction review may be obtained at any time by filing a motion for a new trial pursuant to rule 30 (b).[21] That was the manner in which relief was sought in this case. In such a posttrial proceeding, it is incumbent on the foreign national to demonstrate that the failure to comply with art. 36 of the Vienna Convention gave rise to a substantial risk of a miscarriage of justice. "A substantial risk of a miscarriage of justice exists when we 'have a serious doubt whether the result of the [proceeding] might have been different had the error not been made.' " *Commonwealth* v. *McCoy*, 456 Mass.

[20]Although the United States is no longer bound by the decisions of the ICJ, see note 12, *supra*, the United States was a signatory to the Optional Protocol when *LaGrand* was decided and, therefore, is bound by its holding.

[21]In *Sanchez-Llamas* v. *Oregon*, 548 U.S. 331, 355-356 (2006), the United States Supreme Court held that while the decisions of the ICJ in *LaGrand* and *Avena* were entitled to "respectful consideration," the decisions "cannot overcome the plain import of Article 36" which instructs that "[t]he rights . . . of this Article shall be exercised in conformity with the laws and regulations of the receiving State." Art. 36 (2). The Supreme Court further held that "[i]n the United States, this means that the rule of procedural default — which applies even to claimed violations of our Constitution . . . — applies also to Vienna Convention claims" (citation omitted). *Sanchez-Llamas, supra* at 356. Here, we are not faced with a situation where the defendant's claim is procedurally barred; in Massachusetts, a motion for a new trial is the posttrial process by which a defendant can raise claims of error not raised in the earlier proceeding, albeit different standards of review may apply depending on whether the claim could or should have been raised during those earlier proceedings. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 293-296 (2002), and cases cited (discussing standards of review for unpreserved claims of error).

838, 850 (2010), quoting *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999).

To demonstrate a substantial risk of a miscarriage of justice in this context, a defendant must show that it is likely that if he had been notified of the rights provided in Article 36 of the Vienna Convention, the result of the criminal proceeding would have been different. At a minimum, this means that the defendant must establish that his consulate would have assisted him in a way that likely would have favorably affected the outcome of his case.

In support of his claim, the defendant asserts that had he "known of his right to consular notification and assistance he would have sought that assistance and presumably, at least, have been advised of the necessity of taking great care in seeking to understand his attorney, the proceedings against him and ways in which he might accomplish this (i.e. his right to an interpreter, etc.)." He has, however, produced no evidence of the practices and protocols of the Dominican Republic Consulate (consulate), or of the advice and assistance it would have provided on notification of the detention of one of its citizens. An assumption with respect to such matters is not evidence, and is woefully insufficient to demonstrate that the outcome of the defendant's case — his pleading guilty to a significantly reduced set of charges with no sentence of incarceration — likely would have been different, had he been informed of his right to have his consulate so notified.

Even if we assume that the consulate would have (on such notice) provided the defendant some assistance in defending his case, the principal type of assistance envisioned by the Vienna Convention was afforded to him by virtue of the laws of the Commonwealth and the United States applicable to all persons charged with crimes. Consular officials, it is postulated, will likely have better knowledge of the detaining country's legal system and can therefore help the citizen navigate the law principally through assisting the detainee in retaining counsel.[22] Foreign nationals arrested and detained in the United States are provided with the same constitutional protections as United States citizens, including, in the defendant's circumstances, the

---

[22]Consular officials may also, of course, be in a position to ensure that the individual is not mistreated following his arrest. There is no allegation that the defendant was mistreated in this case.

right to the prompt appointment of an attorney to represent him throughout the proceedings. See *Sanchez-Llamas* v. *Oregon*, 548 U.S. 331, 350 (2006) (noting constitutional and statutory requirements safeguard interests served by art. 36, including right to an attorney and right against self-incrimination). That was done in this case. Indeed, the defendant met with his counsel on several occasions, and with his assistance negotiated a most favorable plea agreement.

To the extent that the defendant claims he received incorrect guidance and advice from his counsel with respect to the immigration consequences of the guilty pleas he agreed to enter, and acted on the basis of that advice to his detriment, he may well have a claim for which a remedy is recognized under our law. That remedy — a new trial based on the ineffectiveness of counsel — is also appropriately sought in a rule 30 (b) motion.[23] See *Commonwealth* v. *Zinser*, 446 Mass. 807, 810 (2006) (claim of ineffectivness of counsel most appropriately raised in motion for new trial). See also *Padilla* v. *Kentucky*, 130 S. Ct. 1473, 1483 (2010) ("when the deportation consequence is truly clear, . . . the duty [of a criminal defense attorney] to give correct advice is equally clear"). While the defendant has indicated that he may pursue a claim for relief on that ground, he has not done so in the case before us.

3. *The presence of an interpreter.* General Laws c. 221C, § 2, provides that "[a] non-English speaker, throughout a legal proceeding, shall have a right to the assistance of a qualified interpreter who shall be appointed by the judge." A "non-English speaker" is defined as "a person who cannot speak or understand, or has difficulty in speaking or understanding, the English language, because he uses only or primarily a spoken language other than English." G. L. c. 221C, § 1. Waiver of this right is only effective if approved by the judge, on the record, after the non-English speaker has consulted with counsel, who explains the effect of the waiver through an interpreter. G. L. c. 221C,

---

[23]We make no assessment of the merits of such a claim should it be brought. We note that the affidavit of the defendant's counsel in the District Court contains no averments regarding any discussion with the defendant about immigration consequences, or more broadly about the advice he might have given with respect to the convictions and consequences of proceeding to trial rather than negotiating a plea agreement of the type entered into in this case.

§ 3 (*a*). A non-English speaker's failure to request an interpreter is not deemed a waiver of that right. G. L. c. 221C, § 3 (*b*). In this case, it is undisputed that the defendant is a non-English speaker and was therefore entitled to an interpreter at the plea hearing as a matter of right.

The defendant asks that his guilty pleas be vacated because, although the judge read him the alien warnings required by G. L. c. 278, § 29D, he nevertheless claims he did not understand the judge because there was no interpreter present.[24] If the plea proceeding occurred in the absence of an interpreter, the alien warnings given may be deemed not to have been understood, and the guilty pleas not free and voluntary. Because the defendant's motion for a new trial comes more than five years after his guilty pleas were entered, and the tape recording of that proceeding has been destroyed pursuant to court rules, see note 7, *supra*, the burden is on the defendant to "present evidence sufficient to rebut a presumption that the plea proceeding was conducted correctly." *Commonwealth* v. *Grannum*, 457 Mass. 128, 133 (2010), citing *Commonwealth* v. *Lopez*, 426 Mass. 657, 661-662, 664-665 (1998).

The defendant has failed to rebut the presumption that the plea hearing was conducted correctly, that is, with the assistance of an interpreter. The judge at the plea hearing could not specifically recall if there was an interpreter present at the hearing, but he found that it was his usual practice to appoint an interpreter if one was needed, and according to the Lawrence District Court clerk's office, there are always two interpreters present in the court house who attended hearings when needed. Although defense counsel also states in his affidavit that he does not "recall if an interpreter was present at the plea hearing," he had earlier brought and prevailed on a motion to suppress the defendant's statements precisely because the defendant was not read

---

[24]Pursuant to Massachusetts law, before accepting a plea of guilty, a judge must inform a defendant of the potential deportation consequences he faces if he is not a United States citizen. G. L. c. 278, § 29D. Failure to advise the defendant of such consequences can result in vacatur of the defendant's guilty plea. *Id.* Where there is no record that the judge advised the defendant of potential deportation consequences, it is presumed that the defendant was not so advised. *Id.* In this case, it is undisputed that the judge advised the defendant of the potential deportation consequences he faced.

his Miranda rights in Spanish. Further, the docket sheet of the lead case disposed of at the plea hearing on August 27 clearly indicated that a Spanish interpreter was required. This dispute could have been avoided if there were a place on the criminal docket sheet to indicate not only whether an interpreter was required, but whether one was, in fact, present at the proceeding. We recommend that such a change be made. In any event, based on the record in this case, the motion judge did not err in denying the defendant's motion for a new trial on this ground.

*Order denying defendant's motion for a new trial affirmed.*